STATE OF NORTH CAROLINA v. PERCELL L. HORTON

No. 1

(Filed 1 April 1980)

1. **Homicide § 20.1— photographs of deceased—admissibility for illustrative purposes**

    Two black and white photographs showing the wounds and face of the deceased were properly admitted for the purpose of illustrating the testimony of a medical expert who described the wounds and stated his opinion as to the cause of death.

2. **Criminal Law § 42; Homicide § 20— clothes worn by murder victim—admissibility**

    Clothes worn by the decedent at the time he was shot to death were properly admitted into evidence.

3. **Criminal Law § 76.6— voluntariness of confession—adequacy of findings**

    The trial court made adequate findings of fact that defendant's confession was made freely and voluntarily.

4. **Criminal Law §§ 89, 95.2— instructions limiting use of confession to impeachment or corroboration**

   The trial court properly gave the jury an instruction limiting the use of defendant's in-custody statements to purposes of impeachment or corroboration, and the court did not err in failing to define the words impeachment and corroboration.

5. **Criminal Law §§ 63, 75.14— low mentality of defendant—insufficient basis for expert testimony—irrelevancy on admissibility of confession**

   The trial court in a homicide case properly excluded the testimony of an expert in clinical psychology concerning defendant's low mental capacity where the expert testified on *voir dire* that he had not personally examined defendant and had performed no psychiatric tests on defendant; the tests which formed the basis of his opinion testimony were administered four years earlier by a third party; at the time the tests were administered the defendant was not receiving treatment from the medical center where the expert practiced; and the expert stated that he did not personally know the defendant and was talking in terms of the general category of mildly retarded people. Furthermore, the testimony was not relevant to the admissibility of defendant's confession since the trial judge during a previous *voir dire* had ruled that the confession was voluntary and admissible.

6. **Criminal Law § 71— testimony that defendant "was going to shoot him again"—shorthand statement of fact**

   In this homicide prosecution, a witness's testimony that defendant, after shooting deceased, reloaded his gun and "was going to shoot him again" was competent as a shorthand statement of the facts describing for the jury what he had seen.

7. **Homicide § 21.5— first degree murder—sufficiency of evidence**

   The evidence was sufficient to support defendant's conviction of first degree murder where it tended to show that deceased and defendant engaged in an argument; defendant walked to the trunk of his car and removed a .12 gauge shotgun; defendant leveled the gun at deceased who was some 10 feet away; deceased began backing up with his hands empty and in the air; and defendant then cocked the hammer on the shotgun and shot deceased in the stomach, causing his death.

ON appeal by defendant to review a trial before *Allsbrook, J.* Judgment entered 10 November 1978.

Defendant was charged by indictment, proper in form, with the murder of Kelly Winborne on 15 August 1978. He was tried by a jury and convicted of first degree murder and upon recommendation of the jury, was sentenced to life imprisonment.

The State's evidence tended to show the following: On the morning of August 15, 1978 defendant, Percell Horton, the de-

ceased, Kelly Winborne, and two others pulled tobacco on the farm of Carroll Brown. They worked from around 7:30 a.m. until approximately 2:00 p.m. After finishing work they proceeded to Harrell & Sons Store in Trap, North Carolina where each of the four bought a quart of beer. After drinking the beer and allowing defendant to clean up, the four men drove to Colerain, North Carolina to enable defendant to purchase car insurance. After obtaining the insurance defendant left Colerain in order to drive to Ahoskie, North Carolina to obtain a license plate for his automobile. Deceased, who had ridden to Colerain with the defendant, was left behind. Returning from Ahoskie, defendant and Steve Palmer (one of the four men present throughout the day) stopped in Trap to get gas for the car. While they were stopped, the deceased arrived in a truck and became angry about defendant having left him in Colerain. The deceased's anger precipitated an argument between him and the defendant. During the argument defendant walked to the trunk of his car and removed a single barrel .12 gauge shotgun. Defendant leveled the gun at the deceased who was approximately 10 feet away. Deceased began backing up with his hands empty and held in the air. Defendant then cocked the hammer on the shotgun and shot deceased in the stomach. After reloading his shotgun, defendant replaced it in the trunk of his automobile and drove away from the station. Kelly Winborne died as a result of the shotgun wound to his stomach.

Defendant did not deny shooting the deceased, but contended the gun when placed to his shoulder just "went off." He also contended he shot Kelly Winborne, for he thought the deceased was going to kill him with "Kung Fu."

*Attorney General Rufus L. Edmisten by William F. Briley, Assistant Attorney General and William R. Shenton, Associate Attorney for the State.*

*W. C. Cooke for the defendant Percell Horton.*

BROCK, Justice.

Defendant's first two assignments of error concern the admission into evidence of two photographs of the deceased, and the clothing which the deceased was wearing at the time of the alleged murder. Defendant contends that these photographs and

clothes had no probative value with respect to any issue to be determined by the jury, and were submitted solely for inflammatory purposes.

[1] Turning first to the photographs, it is settled law in this jurisdiction that:

> "Photographs are admissible . . . to illustrate the testimony of a witness, and their admission for that purpose under proper limiting instructions is not error. (Citations omitted.)

> The fact that a photograph may depict a horrible, gruesome or revolting scene . . . does not render it incompetent . . . ." *State v. Crowder*, 285 N.C. 42, 49, 203 S.E. 2d 38, 43 (1974), *death penalty vacated*, 428 U.S. 903, 49 L.Ed. 2d 1207, 96 S.Ct. 3205 (1976).

The photographs complained of by the defendant were black and white photographs showing the wound and face of the deceased. Both photographs were introduced into evidence to illustrate the testimony of Dr. Gallaway in describing the wounds and giving his opinion as to the cause of death of the deceased. Prior to viewing by the jury, the trial judge gave the proper limiting instruction that the photographs were being admitted for the sole purpose of illustrating the testimony of Dr. Gallaway. Defendant's reliance on *State v. Mercer*, 275 N.C. 108, 165 S.E. 2d 328 (1969), *rev'd. on other grounds*, 287 N.C. 266, 215 S.E. 2d 348 (1975) is misplaced. In *Mercer* the trial judge erred for he admitted an excessive number of gruesome photographs with no probative value. Such is not the case here. Defendant's assignment of error No. 1 is overruled.

[2] As to the admissibility of the clothes worn by the decedent at the time of the shooting, we hold these were also properly admitted into evidence. The pants were introduced to illustrate the testimony of Dr. Gallaway, and the shirt was introduced during the testimony of Detective Wallace Perry as being part of the deceased's clothes picked up at the hospital. In *State v. Rogers*, 275 N.C. 411, 430, 168 S.E. 2d 345, 356-57 (1969), Justice Huskins writing for the Court held, "[a]rticles of clothing identified as worn by the victim at the time the crime was committed are competent evidence, and their admission has been approved in many decisions of this court. (Citations omitted.)" *See also* 1 Stansbury's

N.C. Evidence (Brandis Rev.) § 118 (1973). Defendant's assignment of error No. 2 is overruled.

[3] In his third assignment of error defendant presents four contentions. By his first contention defendant argues the trial court failed to make adequate findings of fact that his confession was freely and voluntarily given, and therefore introduction of defendant's confession for impeachment purposes was error. Following the voir dire concerning the admissibility of defendant's confession, Judge Allsbrook found:

> ". . . having observed the defendant testify on direct examination and cross-examination it is the Court's opinion and the Court finds as fact that the statements made [by the defendant] on August 16, 1978 . . . were voluntarily and understandingly made and for the purpose of cross-examination may be utilitized."

Defendant did not take exception to Judge Allsbrook's finding of fact and it is clearly adequate. This assignment is without merit.

[4] Defendant next argues that the court's instructions to the jury during the trial as to the limited purpose for which the in-custody statements were admitted were so confusing and ambiguous that the jury could not understand whether the State was attempting to impeach or corroborate the witness. Judge Allsbrook instructed that the defendant's statements, if the jury found such statements were made, could be admitted for the purposes of:

> ". . . [I]mpeaching or corroborating this witness, as you so find, and therefore any such statements that he may have made are admitted only for—only as bears upon his credibility as a witness and will not be considered by you for any other purpose. . . ."

Since the court had previously found as fact that the confession was voluntary, the confession was admissible to impeach the defendant once he took the stand. *State v. Overman*, 284 N.C. 335, 347, 200 S.E. 2d 604, 612 (1973). It is also settled law in this jurisdiction that the prior consistent statements of a witness may be introduced to strengthen his credibility. *State v. Hopper*, 292 N.C. 580, 234 S.E. 2d 580 (1977); *State v. Yancey*, 291 N.C. 656, 666, 231 S.E. 2d 637, 643 (1977); *see also* 1 Stansbury's N.C.

Evidence (Brandis Rev.) § 51 (1973) and cases cited in Note 42. The trial judge's instruction explained and limited the use of defendant's prior statements to their proper purposes. Defendant's second contention is without merit.

By his next argument under assignment No. 3 defendant contends the trial judge erred by giving the above noted instruction that the defendant's confession could be used for either impeachment or corroboration without defining the two terms. At trial, defendant made no request for a limiting instruction informing the jury as to the restricted purpose for which the defendant's confession could be considered. It was incumbent on the defendant as the objecting party, to request a limiting instruction, and in light of defendant's failure to do so, had the trial court failed to give *any* instruction limiting the jury's consideration of the evidence, no error would have been committed. *State v. Goodson,* 273 N.C. 128, 159 S.E. 2d 310 (1968); *State v. Ray,* 212 N.C. 725, 194 S.E. 482 (1938); *see also* 4 Strong's N.C. Index 3d, Criminal Law, § 95.1 (1976). However, in spite of defendant's failure to request such an instruction, the trial court did give a proper limiting instruction as to the jury's use of defendant's confession. Assuming arguendo the defendant has standing to challenge this instruction without having requested any limiting instruction at trial, the instruction given was clear and the words impeach and corroborate are words of everyday language and mean what they are generally intended to mean. Therefore the court made no error in not instructing the jury as to the terms' dictionary definitions. This argument is without merit.

[5] In his fourth contention under assignment No. 3 defendant argues that the confession was not voluntary and that defendant was of such a low mentality he did not understand the significance of what he was doing. Defendant argues that testimony concerning the low mental capacity of the defendant by Dr. John Wigglesworth, an expert in clinical psychology, was erroneously excluded. In his voir dire testimony Dr. Wigglesworth, admittedly an expert in clinical psychology, stated he had not personally examined the defendant, nor had he performed psychiatric tests on the defendant. The tests, on the basis of which Dr. Wigglesworth testified, were administered four years ago by a third party. At the time these tests were administered the defendant was not even receiving treatment from the Roanoke-Chowan Med-

ical Center where Dr. Wigglesworth practiced medicine. Dr. Wigglesworth also stated that as a result of these tests, the defendant had not been evaluated as mentally ill. The defendant enlisted Dr. Wigglesworth's testimony on voir dire subsequent to the State's cross-examination of the defendant, where the defendant's confession had been admitted into evidence for impeachment purposes. After his voir dire testimony, the trial judge ruled Dr. Wigglesworth's testimony not relevant and refused to allow his testimony before the jury. We agree with the trial judge and hold that the testimony of Dr. Wigglesworth was irrelevant and properly excluded. In his own testimony Dr. Wigglesworth stated, "I personally do not know the defendant so I am talking in the terms of the general category of mildly retarded people." His testimony would in no way have proved a fact in issue and was properly excluded. *Corum v. Comer*, 256 N.C. 252, 123 S.E. 2d 473 (1962); *see also* 1 Stansbury's N.C. Evidence (Brandis Rev.) § 78 (1973).

The lack of relevance of Dr. Wigglesworth's testimony is even more apparent since prior to allowing the defendant's confession before the jury, the trial judge during the previous voir dire had, based on competent evidence, concluded the statements made by the defendant were freely and voluntarily given. Defendant offered no evidence at this voir dire. This finding, since it was supported by competent evidence, is conclusive. *Fast v. Gulley*, 271 N.C. 208, 155 S.E. 2d 507 (1967). The trial judge having previously ruled the confession voluntary, the testimony of Dr. Wigglesworth as to defendant's mental capacity was on this ground also properly excluded as irrelevant. Defendant's contention that such testimony should have been admitted as part of the *res gestae* is without merit.

[6] By his fourth assignment of error defendant contends the trial court committed reversible error by allowing the State's witness, Ray Lassiter, to testify that the defendant was going to shoot Kelly Winborne again. After having testified that the defendant shot Kelly Winborne, Lassiter then testified that defendant put his gun back in the car but reloaded it first. This exchange followed:

"Q. How did he reload the gun?

A. This popped back and put the bullet in there and was going to shoot him again.

Q. He got ready to do what?

A. He was going to shoot him again.

Q. Shoot who again?

A. He . . . .

MR. COOKE: Objection.

THE COURT: Overruled.

Q. At the time he got ready to shoot Kelly Winborne again what position was Kelly Winborne in?

OBJECTION. OVERRULED.

A. In the same."

Defendant argues the statement that defendant was going to "shoot him again" should have been excluded as a conclusion or opinion of the witness of a fact beyond his knowledge. We disagree. The testimony of Ray Lassiter was merely a description of what the defendant did after firing the first shot. Lassiter testified that the defendant reloaded the gun and pointed it again at the deceased who was then down on his knees, and that two of the eyewitnesses told him not to shoot Kelly Winborne again. The statement "he was going to shoot him again," constituted the defendant's shorthand statement of the facts describing for the jury what he had seen. As such, it is admissible. *State v. Goss*, 293 N.C. 147, 235 S.E. 2d 844 (1977); *State v. Yancey, supra; see also* 1 Stansbury's N.C. Evidence (Brandis Rev.) § 125 (1973). Defendant's fourth assignment of error is overruled.

By his fifth assignment of error defendant contends the exclusion of Dr. Wigglesworth's testimony was error. This assignment was discussed under assignment of error No. 3 and is overruled.

[7] In assignments of error Nos. 6 and 7, defendant contends the trial court erred in refusing to dismiss the charge of murder, or in the alternative, the charge of first degree murder at the close of the State's evidence. He also contends the court committed error in its failure to dismiss the charge at the conclusion of all the evidence.

At the close of the State's evidence, defendant moved for dismissal which was denied. Following this denial defendant proceeded to offer evidence. Having made this election, defendant waived his motion to dismiss at the close of the State's evidence and proper consideration was thereafter upon his motion to dismiss at the close of all the evidence. G.S. 15-173. *Accord, State v. Jones,* 296 N.C. 75, 248 S.E. 2d 858 (1978); *State v. Davis,* 282 N.C. 107, 191 S.E. 2d 664 (1972). With regard to defendant's motion to dismiss at the close of all the evidence, by the way of testimony of three eyewitnesses, when viewed in the light most favorable to the State, the evidence was clearly sufficient to support a verdict of guilty of first degree murder. *See State v. Haywood,* 295 N.C. 709, 717, 249 S.E. 2d 429, 434 (1978). Assignments of error Nos. 6 and 7 are overruled.

By his eighth assignment of error defendant contends the trial court erred by failing to set aside the verdict as against the weight of the evidence. The decision of the trial court in ruling on a motion to set aside a verdict as contrary to the weight of the evidence is an exercise of its discretion. Absent an abuse of this discretion, the trial court's decision is not reviewable on appeal. *State v. Vick,* 287 N.C. 37, 213 S.E. 2d 335, *cert. dismissed,* 423 U.S. 918, 46 L.Ed. 2d 367, 96 S.Ct. 228 (1975); *see also* 4 Strong's N.C. Index 3d, Criminal Law, § 132 (1976) and cases cited in Note 47. Given the amount of evidence presented in this case, we hold the trial court did not abuse its discretion in refusing to overturn the verdict. Defendant's eighth assignment of error is overruled.

Defendant's final argument is that the trial court committed error in entry of judgment and committing defendant to a term of life imprisonment. The evidence was clearly sufficient for the jury to find the defendant guilty of first degree murder. Pursuant to G.S. 14-17, life imprisonment is the lesser of the two penalties authorized as punishment for the offense of first degree murder; the other being death. The jury returned a verdict of first degree murder and recommended the defendant be punished by life imprisonment. The judge had no alternative but to enter judgment in accordance with this verdict. This assignment is overruled.

We therefore hold the defendant received a fair trial free from prejudicial error.

No error.