STATE OF NORTH CAROLINA v. JOE LEWIS PITTMAN

No. 563A90

(Filed 4 September 1992)

1. **Criminal Law § 507 (NCI4th) — unrecorded bench and chambers conferences — no prejudice**

   The trial court did not commit prejudicial error in a non-capital murder prosecution by failing to record bench and chambers conferences after granting defendant's motion for complete recordation where none of the conferences resulted in a significant ruling, if any ruling resulted at all, and defendant failed to specifically allege how he was prejudiced by the lack of complete recordation. N.C.G.S. § 15A-1241.

   **Am Jur 2d, Criminal Law § 916.**

   **Exclusion or absence of defendant, pending trial of criminal case, from courtroom, or from conference between court and attorneys, during argument on question of law. 85 ALR2d 1111.**

2. **Criminal Law § 507 (NCI4th) — unrecorded jury charge conferences — no prejudice**

   A defendant in a noncapital murder prosecution failed to demonstrate how he was materially prejudiced by two unrecorded jury charge conferences where all counsel for defendant and the State were present, defense counsel did not object to the failure to require recordation of these conferences, the trial court invited defense counsel to state its objections to the court's proposed instructions, and defense counsel took full advantage of its opportunity to do so. N.C.G.S. § 15A-1231(b).

   **Am Jur 2d, Criminal Law § 916.**

   **Exclusion or absence of defendant, pending trial of criminal case, from courtroom, or from conference between court and attorneys, during argument on question of law. 85 ALR2d 1111.**

3. **Constitutional Law § 342 (NCI4th) — bench and chambers conferences — outside defendant's presence — no request or objection — waiver of right to appeal**

   A defendant in a noncapital murder prosecution waived his right to be present at bench and chambers conferences where he failed to request to be present or to object to his

absence. Because the State did not try defendant for his life, his right to be present at every stage of his trial was a personal right which could be waived by his failure to assert it.

**Am Jur 2d, Criminal Law §§ 910, 928.**

**Accused's right, under Federal Constitution, to be present at his trial—Supreme Court cases. 25 L. Ed. 2d 931.**

4. **Evidence and Witnesses § 2479 (NCI4th)— murder—defendant's mental status—sequestration of witnesses denied—no abuse of discretion**

The trial court did not abuse its discretion in a noncapital murder prosecution by denying defendant's motion for sequestration of the State's witnesses where the trial court heard the arguments of counsel prior to denying defendant's motion and defendant gave no reason for suspecting that the State's witnesses would use previous witnesses' testimony as their own.

**Am Jur 2d, Trial §§ 240-242.**

**Prejudicial effect of improper failure to exclude from courtroom or to sequester or separate state's witnesses in criminal case. 74 ALR4th 705.**

5. **Homicide § 230 (NCI4th)— first degree murder—evidence sufficient**

There was substantial evidence of each element of two first degree murders where the evidence, taken in the light most favorable to the State, tended to show that neither of the victims provoked defendant; one victim was helpless when she was attacked by defendant; previous difficulties existed between defendant and each of the victims and there was some evidence that he had threatened each of them on previous occasions; and the killings were committed in a brutal manner during which defendant inflicted numerous wounds on the victims.

**Am Jur 2d, Homicide §§ 44-48.**

6. **Criminal Law § 113 (NCI4th)— murder—failure to provide statements and witness list—motion to suppress denied—no abuse of discretion**

The trial court did not abuse its discretion in a noncapital murder prosecution, and there was no prejudice, where defend-

ant contended that the State had not given an inculpatory statement to defendant or provided a list of witnesses interviewed by law enforcement officials at the scene, but defendant never informed the trial court that the statement had not been provided, did not request that the statement be suppressed, and did not inform the court that he thought he was entitled to the list of witnesses or that he had not been provided with the list. There can be no abuse of discretion when a party fails to bring a matter to the court's attention in order for the judge to exercise his discretion and rule thereon. There was no abuse of discretion in refusing to suppress another statement which was allegedly inaccurate as provided because the State presented substantial evidence on the issue even absent the statement.

**Am Jur 2d, Criminal Law § 998.**

**Right of accused in state courts to inspection or disclosure of evidence in possession of prosecution. 7 ALR3d 8.**

7. **Evidence and Witnesses § 3198 (NCI4th) — defense witness — recross examination — allowed to read suppression hearing testimony of State's witness into evidence — no error**

The trial court did not err in a noncapital murder prosecution by allowing a defense witness to read into evidence the prior suppression hearing testimony of a State's witness where defendant had called the witness to rebut the testimony of a State's witness, a Highway Patrol officer, concerning statements made by defendant, and the State asked the witness on recross examination to read into evidence the Trooper's prior suppression hearing testimony

**Am Jur 2d, Criminal Law § 728.**

8. **Homicide § 678 (NCI4th) — murder — instructions — diminished capacity — no error**

The trial court did not err in a murder prosecution by refusing defendant's request to include an instruction on diminished capacity in its final mandate where the court included in its charge an instruction that the jury could consider defendant's mental condition in connection with his ability to formulate a specific intent to kill. The failure to include a similar charge in its final mandate could not have created

confusion in the minds of the jurors as to the State's burden of proof.

**Am Jur 2d, Homicide § 561.**

9. **Evidence and Witnesses § 1274 (NCI4th) — murder — confession — waiver of rights — defendant's mental capacity**

   The trial court did not err in a noncapital murder prosecution by failing to suppress defendant's signed confession where defendant contended that the confession was involuntary due to his mental condition. Although there was substantial evidence that defendant had a history of schizophrenia and that he had sought and obtained medication for this condition approximately three days prior to the crimes at issue, that evidence alone fails to establish that defendant lacked the capacity to knowingly, intelligently, and voluntarily waive his rights. Defendant's psychiatric expert was unable to offer a professional opinion as to whether defendant could have properly waived his rights; there was no evidence that defendant exhibited bizarre behavior or that he was unable to care for himself; his confession was not illogical and nonsensical, but was consistent with statements he had made on prior occasions to two State's witnesses and with the physical evidence at the scene; several of the State's witnesses who were acquainted with defendant and his history of mental illness testified that defendant was rational and aware of what he had done on the night of the killing; and defendant was cooperative and generally followed instructions.

   **Am Jur 2d, Evidence §§ 526, 543, 582.**

   **Validity or admissibility, under Federal Constitution, of accused's pretrial confession as affected by accused's mental illness or impairment at time of confession — Supreme Court cases. 93 L. Ed. 2d 1078.**

10. **Constitutional Law § 290 (NCI4th) — murder — effective assistance of counsel — refusal to hear argument — no error**

    Defendant was not denied effective assistance of counsel in his noncapital murder trial where, although defendant contended that the court refused to hear counsel's arguments in favor of a motion to suppress, it does not appear that defense counsel ever made any effort to argue in support of defendant's position. Defense counsel stated that he possessed three cases

discussing the State's burden of showing a knowing and voluntary waiver of rights and the judge stated that it would not be necessary to review those cases. Nothing in those proceedings indicates that the trial court denied defendant his right to the effective assistance of counsel.

**Am Jur 2d, Criminal Law §§ 748, 751, 752.**

**Adequacy of defense counsel's representation of criminal client regarding confessions and related matters. 7 ALR4th 180.**

**11. Criminal Law § 446 (NCI4th) — murder — closing argument — if defendant not guilty, justice is dead — not improper**

There was no error requiring the court to intervene *ex mero motu* in the prosecutor's closing argument in a murder prosecution where the prosecutor argued that if defendant was found not guilty, "justice in Halifax County will be dead," nor was there anything in the remainder of the argument so grossly improper that the trial court should have intervened.

**Am Jur 2d, Trial §§ 554, 566-567, 654.**

**Propriety and prejudicial effect of prosecutor's argument to jury indicating his belief or knowledge as to the guilt of accused — modern state cases. 88 ALR3d 449.**

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing two consecutive life sentences entered by *Booker, J.,* at the 20 August 1990 Criminal Session of Superior Court, HALIFAX County, upon two verdicts of guilty of first degree murder. Heard in the Supreme Court 12 March 1992.

Defendant was tried non-capitally for the first degree murders of Spencer Powell and Connie Williams. He relied on insanity as a defense. The evidence presented at trial showed that defendant, an honorably discharged veteran, lived in Scotland Neck with his mother and girlfriend. Defendant's girlfriend, Connie Williams, was one of the victims. On 5 May 1989, around 8:00 p.m., defendant went to the house of his neighbor, Durwood Lewis, and told Lewis, "[t]here's been a mercy killing at my house, call the sheriff." Defendant then left and returned to his house.

Law enforcement officers arrived at defendant's house approximately twenty minutes later. When they arrived they observed

one of the victims, Spencer Powell, lying on defendant's front porch in a puddle of blood. Powell was defendant's neighbor. Powell had suffered two severe wounds to the head. Defendant then appeared, walked out of the house, stepped over the body and onto the porch. Defendant was instructed to place his hands over his head and to walk down the steps. Defendant proceeded down the steps and said, "[y]ou might as well come on and get me, . . . I done killed both of 'em." Continuing, he said, "I killed both of them with a damn stick." Defendant was handcuffed and transported to the Sheriff's Department.

The officers who remained at the crime scene entered the house where they found Connie Williams lying face down on the floor in a puddle of blood. Williams suffered a large gaping wound to the head. The officers discovered an ax in the kitchen which was later determined to have inflicted the fatal wounds to the victims' heads.

Defendant was transported to the Sheriff's Department by a Highway Patrol officer. While en route, defendant stated to the officer, who had known defendant for some time, that, "I told 'em I was gone [sic] kill 'em. I went to the Sheriff's Department and told 'em that I was gone [sic] kill 'em. . . . I caught 'em together and I did what I had to do." Defendant was later met by a detective from the Sheriff's Department. The detective advised defendant of his rights pursuant to the decision in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). Defendant indicated that he understood his rights and that he would answer the detective's questions. Defendant signed a written waiver of his rights and then confessed to killing the two victims. The detective prepared a written summary of what defendant had told him and read it aloud to defendant. Defendant told the detective, "[y]ou got it right[,]" and signed the statement.

The State presented several lay witnesses who testified that they knew the defendant, that they were aware that he had a history of mental illness, and that he had a reputation in the community as being mentally unstable. These witnesses also testified that on the evening of the murders, defendant was coherent and that he acted normal in all aspects. There was some evidence that defendant had the odor of alcohol about his person, yet several witnesses testified as to defendant's apparent sobriety.

Defendant called three witnesses who presented testimony from which the jury could have found the defendant was not guilty by reason of insanity.

*Lacy H. Thornburg, Attorney General, by G. Lawrence Reeves, Jr., Assistant Attorney General, for the State.*

*William L. Livesay for defendant appellant.*

WEBB, Justice.

On appeal, defendant brings forth numerous assignments of error. We conclude that defendant's trial was free from prejudicial error.

[1] Defendant first assigns as error the trial court's failure to require recordation of various bench and chambers conferences. Prior to trial, defendant moved for complete recordation of all proceedings, specifically including motion hearings, jury selection and bench conferences. Although these motions were allowed by the trial court, it held several unrecorded bench and chambers conferences, including two chambers conferences that concerned the jury charge. Defendant contends that the trial court's actions violated his due process rights under the federal and North Carolina constitutions and that he was prejudiced thereby. We disagree.

N.C.G.S. § 15A-1241 mandates that the trial judge require the court reporter to record "all statements from the bench and all other proceedings[.]" In non-capital cases, jury selection, opening statements, final jury arguments and arguments of counsel on questions of law are excepted from the recordation requirement. *Id.* However, upon proper motion jury selection, opening statements and final jury arguments must also be recorded. *Id.* In this case, the trial court, having allowed defendant's motion for complete recordation, should have required recordation of all conferences and its failure to do so constituted error. We must now determine whether defendant was prejudiced by this error.

Excluding the two unrecorded charge conferences, the record reveals that the trial court conducted seven unrecorded bench conferences and one unrecorded chambers conference. The first such bench conference occurred during defendant's suppression hearing after the State had completed its examination of its first witness and before it called its second witness. The record indicates that

no ruling, significant or otherwise, resulted from this conference. At its completion, the State simply proceeded to call its next witness.

The chambers conference occurred when the State announced that it was prepared to call defendant's case. This conference was held at the request of the trial judge and at its conclusion, the State proceeded to call defendant's case as it had done before.

The second bench conference occurred immediately after defendant's case had been called when defense counsel asked to approach the bench "for a little housekeeping matter[.]" The third bench conference was also initiated by defense counsel when, during jury selection, the prosecutor learned that a prospective juror was acquainted with defense counsel.

The next bench conference also occurred during jury *voir dire*. The State had challenged for cause a prospective juror who had revealed that his nephew had been convicted of murder three years earlier and that he would be unable to be an unbiased juror. This conference was initiated by the court and at its conclusion the court examined the juror before allowing the State's challenge for cause. The fifth bench conference was initiated by the court during defense counsel's examination of a prospective juror. From the context of defense counsel's initial line of examination and his examination subsequent to the conference, it appears that the conference was called for the purpose of cautioning defense counsel against asking the juror how she would decide the case under a particular set of circumstances.

The next bench conference occurred after defense counsel had indicated his satisfaction with a juror. At the conclusion of the conference, the judge instructed the clerk to place another juror in the jury box after which jury selection proceeded in ordinary fashion. The final bench conference was initiated by defense counsel prior to his examination of a juror whose husband worked as an administrative assistant in the District Attorney's office. This conference was preceded by another conference, also at defense counsel's initiation, between defense counsel and the prosecutor. Following the conference, defense counsel examined the juror and then unsuccessfully sought to have her excused for cause. Defense counsel then exercised a peremptory challenge against this juror.

In his brief, defendant does not say, and we cannot discern, how he was prejudiced by the trial court's failure to record these

various conferences. While the content of these conferences is unclear, the record shows that none of the conferences resulted in a significant ruling, if any ruling resulted at all.

The first chambers conference was held by the court before defendant's trial had actually begun. One of the bench conferences, in the words of defense counsel, concerned a "housekeeping matter." Three of the conferences clearly concerned the subject of juror bias. One juror stated that he could not be impartial. Another juror was the wife of an administrative assistant with the District Attorney's office. The third potentially biased juror was acquainted with all trial counsel and had at sometime been represented by defense counsel. The record indicates that another conference was called for the purpose of cautioning defense counsel against improper juror *voir dire*. The remaining two conferences were initiated by the trial judge during transitional stages of the proceedings and neither conferences resulted in any ruling by the court. Based on the record facts and defendant's failure to specifically allege how he was prejudiced by the lack of complete recordation, we hold that the trial court's failure to require complete recordation was harmless beyond a reasonable doubt.

[2]    Defendant next contends that the trial court erred by conducting unrecorded jury charge conferences. N.C.G.S. § 15A-1231 provides that charge conferences must be recorded but that, "[t]he failure of the judge to comply fully with the provisions of this subsection does not constitute grounds for appeal unless his failure, not corrected prior to the end of the trial, materially prejudiced the case of the defendant." N.C.G.S. § 15A-1231(b) (1988).

In this case, the record reflects that the trial court conducted two unrecorded charge conferences at which all counsel for defendant and for the State were present. Defense counsel did not object to the trial court's failure to require recordation of these conferences. At the conclusion of these conferences, the judge explained on the record that the chambers conferences had been conducted and that it would instruct the jury according to the applicable North Carolina Pattern Jury Instructions. The judge stated to trial counsel that "if you have any comment to make about these as we go along, I would suggest that you make it as we proceed." The court then read the number and title of each instruction it intended to give. The record reflects that defense counsel made numerous requests that additional or different in-

structions be given. As described in defense counsel's own words, these recorded requests were made "for the protection of the record[.]"

The record shows that the trial court invited defense counsel to state its objections to the court's proposed instructions and that defense counsel took full advantage of its opportunity to do so. Thus, defendant has failed to demonstrate how he was materially prejudiced by the two earlier unrecorded charge conferences. N.C.G.S. § 15A-1231(b) (1988); *see also State v. Bacon*, 326 N.C. 404, 390 S.E.2d 327 (1990).

[3] Defendant next contends that his federal and state constitutional rights to be present at every stage of his trial were violated when the trial court conducted bench and chambers conferences outside of his presence. Defendant takes the position that he had an unwaivable right to be present at every stage of his non-capital trial because he was charged with first degree murder, for which he could have been tried for his life. Defendant cites the Court's decision in *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635 (1989), *sentence vacated*, --- U.S. ---, 111 L. Ed. 2d 777 (1990), *on remand*, 328 N.C. 532, 402 S.E.2d 577 (1991), in support of this contention.

It is well settled that the North Carolina Constitution grants criminal defendants the right to be confronted by witnesses against them and to be present at every stage of their trials. *Id.* at 29, 381 S.E.2d at 651. When a defendant is tried for a capital felony, his right to be present at every stage of his trial is unwaivable. *Id.* In this case, the State did not try defendant for his life. Thus, defendant's case lost its capital nature and defendant's right to be present at every stage of his trial was a personal right which could be waived, either expressly, or by his failure to assert it. *State v. Braswell*, 312 N.C. 553, 559, 324 S.E.2d 241, 246 (1985). Having failed to request to be present at either of the conferences or to object to his absence therefrom, defendant waived his right to be present and cannot, on appeal, assign as error the trial court's denial of that right. This assignment of error is overruled.

[4] Defendant next contends that the trial court erred by denying his motion for sequestration of the State's witnesses. Defendant says he was prejudiced by the court's ruling because, unsequestered, the State's witnesses were allowed to tailor their testimony to that of earlier State's witnesses. Defendant argues that his mental status at the time of the crime was of critical importance to his

STATE v. PITTMAN

[332 N.C. 244 (1992)]

defense and that because his motion was denied, the State's witnesses tailored their testimony to the testimony of earlier witnesses to the effect that defendant appeared "normal" or "rational" at the relevant times.

While it is true that one of the purposes for requiring sequestration is to prevent witnesses from tailoring their testimony from that of earlier witnesses, in order to show error a defendant must show that the trial court abused its discretion. N.C.G.S. § 15A-1225 (1988); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983); *State v. Harrell*, 67 N.C. App. 57, 312 S.E.2d 230 (1984). In this case, the trial court heard arguments of counsel prior to denying defendant's motion. Having reviewed those arguments, we cannot hold that the trial court abused its discretion by denying defendant's motion. When asked by the court, defendant gave no reason for suspecting that the State's witnesses would use previous witnesses' testimony as their own. We hold that defendant has failed to show that the trial court abused its discretion and thus overrule this assignment of error.

[5] Defendant next contends that the State failed to present substantial evidence of each essential element of the offenses charged and that therefore the trial court erred by denying his motions to dismiss, to set aside the verdict, and for a new trial. Specifically, defendant says that considering the evidence of defendant's mental illness, there was insufficient evidence of premeditation or deliberation. We disagree.

When the State presents substantial evidence of each of the elements of the crime charged, the question of the defendant's guilt of that charge should be submitted to the jury. *State v. Horton*, 299 N.C. 690, 263 S.E.2d 745 (1980); *State v. Corn*, 303 N.C. 293, 278 S.E.2d 221 (1981). " 'Substantial evidence' is that amount of relevant evidence that a reasonable mind might accept as sufficient to support a conclusion." *Corn*, 303 N.C. at 296, 278 S.E.2d at 223. When determining whether the State has presented substantial evidence, the trial court should evaluate the evidence in the light most favorable to the State. *State v. Simpson*, 303 N.C. 439, 279 S.E.2d 542 (1981).

Premeditation means thought beforehand for some length of time, however short. No particular length of time is required and it is sufficient if the premeditation occurred at any time prior to the killing. *State v. Myers*, 299 N.C. 671, 263 S.E.2d 768 (1980).

Deliberation means the defendant carried out an intent to kill in a cool state of blood and not under the influence of a violent passion or sufficient legal provocation. *State v. Hamlet*, 312 N.C. 162, 321 S.E.2d 837 (1984).

Premeditation and deliberation ordinarily are not susceptible to proof by direct evidence and must usually be proved circumstantially. *State v. Buchanan*, 287 N.C. 408, 215 S.E.2d 80 (1975). Among the circumstances that are to be considered in determining whether a killing was with premeditation and deliberation are: (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the occurrence giving rise to the victim's death; (4) ill-will or previous difficulty between the parties; (5) evidence that the killing was done in a brutal manner; and (6) the nature and number of the victim's wounds. *State v. Gladden*, 315 N.C. 398, 340 S.E.2d 673, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986).

At trial numerous witnesses testified that, in their opinion, immediately after the killings, defendant's mental and physical faculties were not impaired, that he knew what he was saying and doing. Connie Williams' sister, Mildred Gray, testified that approximately two weeks prior to 5 May 1989, she was talking with the victim in Gray's yard. Defendant ran into the yard, carrying a knife behind him and preparing to stab the victim. When Gray told defendant that she did not believe that he would stab the victim, he turned and left. Betty Boyd, a Halifax County magistrate, testified that two or three days prior to the killings defendant had visited her at her office and told her that Spencer Powell had stolen food and clothing from defendant's home. Boyd told defendant that he needed more evidence and that the Sheriff's Department needed to investigate the allegations. Deputy Sheriff Joe Williams testified that approximately two weeks prior to 5 May, defendant told him that Powell had been stealing defendant's food and "messing with" defendant's girlfriend when defendant was not around. When Williams told defendant that he should let the Sheriff's Department handle the problem, defendant said that he would "deal with it [himself]."

In addition to the evidence above, the State introduced into evidence defendant's signed confession in which he stated in part:

Tonight Spencer Powell came to my house. I don't know exactly what time it was. He didn't bring anything to drink, but we had some beer there. Spencer wanted something to drink, but I wouldn't give him any beer because he done broke into my house one time and stole some food out of my refrigerator. He ain't nothing but a thief and a rogue. Spencer sat out on the porch because I wouldn't let him in the house. . . . I went out on the porch tonight and told Spencer I didn't want him to come to my house anymore. I don't know what he said back to me, but it was something because it made me mighty angry. I went back into my house and got my axe handle. I went back outside and I hit Spencer across the head. Spencer was standing up when I hit him. I hit him just once and he fell to the porch. I went back inside. Connie was passed out on the floor and I took and hit her. I don't know exactly where I hit her at, but I know she caught a lick from me. I only hit her once. . . .

Additional evidence tended to show that defendant killed the victims by striking their heads with an ax. Williams suffered multiple wounds to her head and face. One wound was caused by a severe blow to her head that broke the skull bone, forced it inward and then tore the underlying brain tissue. Powell suffered a depressed skull fracture to the front left of his skull as well as a wound to the crown of his head which literally laid his skull open.

This evidence, taken in the light most favorable to the State, tended to show that neither of the victims provoked defendant. Connie Williams was helpless when she was attacked by defendant. Previous difficulties existed between defendant and each of the victims and there was some evidence that he had threatened each of them on previous occasions. These killings were committed in a brutal manner during which defendant inflicted numerous wounds on the victims. We hold that there was substantial evidence of each element of the crimes charged and that the trial court properly denied defendant's motions.

[6] Defendant next assigns as error the trial court's failure to suppress two statements that were allegedly made by defendant following the killings. Defendant contends that the trial court should have suppressed these statements as a sanction against the State for failing to provide a copy of one of defendant's statements, providing an inaccurate copy of another statement, and for failing

STATE v. PITTMAN

[332 N.C. 244 (1992)]

to provide a list of the witnesses interviewed by law enforcement officers at the crime scene. This assignment of error is meritless.

Whether to impose sanctions for failure to comply with a discovery order is a matter addressed to the sound discretion of the trial judge. *State v. Thomas*, 291 N.C. 687, 231 S.E.2d 585 (1977); *State v. Jones*, 295 N.C. 345, 245 S.E.2d 711 (1978). The first statement that defendant contends should have been suppressed was testified to by Gwen Wright. Wright testified that defendant said, "[i]f you come up here, it already two dead bodies, and if you come up here there'll be two more dead bodies." Defendant contends that this statement was never provided to defendant and that it therefore should have been suppressed. However, defendant never informed the trial court that this statement had not been provided to defendant, nor did he request that the statement be suppressed. Likewise, it does not appear that defendant informed the court that he thought he was entitled to the list of witnesses or that he had not been provided a copy of the same. When a party fails to bring a matter to the court's attention in order for the judge to exercise his discretion and rule thereon, there can be no abuse of discretion.

The second statement defendant contends should have been suppressed occurred in the testimony of Trooper Carmon. Carmon testified, as transcribed by the court reporter, that while he was transporting defendant to jail, defendant said, "I went to the Sheriff's Department and told 'em I was gone [sic] kill 'em. . . ." Defendant says that Carmon's testimony was that defendant said, "I was gone [sic] kill *them*." [Emphasis added.] Prior to trial, the State provided defendant with a copy of a statement in which he allegedly said, "I told the Sheriff's Department that I was going to kill *him*." [Emphasis added.] Defendant does not contend that the State intentionally provided inaccurate discovery. However, he does argue that he was prejudiced by the admission of Carmon's testimony because it was the only evidence tending to show that defendant acted with premeditation and deliberation in the killing of Williams.

We hold that defendant has failed to show that the trial court abused its discretion by refusing to suppress this statement. However, taking as true defendant's contention that Carmon's testimony differed from the statement provided to defendant, any error in the admission of the statement was harmless. As we held

STATE v. PITTMAN

[332 N.C. 244 (1992)]

above, the State presented substantial evidence of premeditation and deliberation, even in the absence of the statement at issue.

[7]   By his next assignment of error, defendant contends that the trial court committed prejudicial error by allowing a defense witness to read into evidence the prior testimony of State's witness Carmon. Defendant called the witness in order to rebut Trooper Carmon's testimony that defendant had used the word "them" as opposed to the word "him." On recross-examination the prosecutor asked the witness to read into evidence Carmon's prior suppression hearing testimony in which he stated that defendant had used the word "them."

In *State v. Sparks*, 297 N.C. 314, 255 S.E.2d 373 (1979), the Court held that no error was committed when the trial court allowed the court reporter to read into evidence the prior testimony of witnesses who testified during the defendant's second trial. Specifically, the Court held that, "[t]estimony at a former trial is admissible for corroborative purposes." *Id.* at 334, 255 S.E.2d at 385-386. Therefore, we hold that the trial court did not err by allowing the witness to read into evidence the suppression hearing testimony of Trooper Carmon in order to corroborate Carmon's trial testimony to the effect that defendant said that, "he was going to kill *them*." [Emphasis added.] This assignment of error is overruled.

[8]   Next, defendant contends that the trial court erred by refusing defendant's request to include an instruction on diminished mental capacity in its final mandate. The court's charge included instructions on diminished mental capacity and the defense of insanity. Defendant does not contend that these instructions were erroneous. Rather he contends that by refusing to include a diminished capacity instruction in its final mandate, the trial court's instructions confused the jury "as to where defendant's 'mental capacity' fit in with the elements the State has the burden of proving[.]" Having thoroughly reviewed the court's charge, we disagree. The court included in its charge an instruction that the jury could consider defendant's mental condition in connection with his ability to formulate a specific intent to kill. This charge is in accord with the Court's decision in *State v. Rose*, 323 N.C. 455, 373 S.E.2d 426 (1988). That the court did not include a similar charge in its final mandate could not have created confusion in the minds of the

jurors as to the State's burden of proof. This assignment of error is overruled.

[9] Defendant next contends that the trial court erred by failing to suppress defendant's signed confession. Defendant says that, based on the totality of the circumstances, defendant's confession was involuntary and that the trial court erred by concluding as a matter of law that defendant knowingly, intelligently and voluntarily waived his *Miranda* rights. He further says that because the trial court would not allow defendant's counsel to present his legal arguments in favor of his position, defendant was denied his right to the effective assistance of counsel.

Defendant contends that this case is similar to *State v. Ross*, 297 N.C. 137, 254 S.E.2d 10 (1979), in which the Court, after weighing and considering all of the evidence, held that "the inescapable conclusion is that 'the confession most probably was not the product of any meaningful volition.'" *Id*. at 143, 254 S.E.2d at 14, *quoting Blackburn v. Alabama*, 361 U.S. 199, 211, 4 L. Ed. 2d 242, 250 (1960). In *Ross*, the evidence showed that the defendant had a history of mental illness dating back twelve or thirteen years and that he had been involuntarily committed to a psychiatric hospital as recently as one week prior to the crime he allegedly committed. *Id*. at 141, 254 S.E.2d at 12. Three days prior to the crime and the defendant's confession, he had been to a mental health clinic. The therapist who saw him testified that his "mood and affect were 'inappropriate,' he had 'poor judgment,' and 'there was a very high likelihood that he was suffering from psychotic conditions,' specifically schizophrenia." *Id*. at 141, 142, 254 S.E.2d at 13. Other evidence tended to show that the defendant had been unable to work, incapable of caring for himself, and exhibiting bizarre behavior. *Id*. at 142, 254 S.E.2d at 13. The victim of the crime testified that the defendant looked strange and psychiatric examination following the defendant's confession revealed that he was suffering from "chronic, undifferentiated schizophrenia." *Id*. In addition, the defendant's confession was itself illogical and nonsensical. *Id*. at 143, 254 S.E.2d at 13.

The evidence in the case *sub judice* concerning defendant's mental status is distinguishable from the evidence presented in *Ross*. Furthermore, the evidence supports the trial court's findings of fact, which findings are thus binding on appeal despite the existence of conflicts in the evidence. *State v. Simpson*, 314 N.C.

359, 334 S.E.2d 53 (1985). Although there was substantial evidence that defendant had a history of suffering from schizophrenia and that he had sought and obtained medication for this condition approximately three days prior to the crimes at issue, this evidence, standing alone, fails to establish that defendant lacked the capacity to knowingly, intelligently and voluntarily waive his rights.

Defendant's psychiatric expert, Dr. Lara, testified that he was unable to offer a professional opinion as to whether defendant could have properly waived his rights. Dr. Lara testified that although he was unable to determine the exact level of defendant's understanding, the fact that defendant responded coherently to questions indicated that he had some level of understanding.

Unlike *Ross*, here there was no evidence that defendant exhibited bizarre behavior. Nor was there any evidence that he was unable to care for himself. Additionally, there was evidence which tended to show that defendant made periodic visits to the Halifax County Mental Health Center to obtain medicine to control his mental illness and that he had done so three days prior to the killings. Contrary to defendant's contention, his confession was not illogical and nonsensical. Rather, his confession is a chronological account of the events leading up to the killings. In his confession, defendant stated his belief that Powell had stolen defendant's food and that the victims were engaged in some type of intimate relationship. This statement was consistent with statements he had made on prior occasions to two State's witnesses. Defendant's statement was also consistent with the physical evidence at the scene. He accurately described the position of the victims' bodies, the location of their wounds, and the location where he had placed the murder weapon. Although defendant described the ax used to kill the victims as a stick or an ax handle, we cannot say that this inaccuracy is necessarily indicative of mental incompetence.

Several of the State's witnesses were acquainted with defendant and were aware of his history of mental illness. These witnesses testified that on the night of the killings, defendant was rational and aware of what he had done. None of these witnesses observed anything abnormal about defendant, his behavior, or his speech on the night in question. He was cooperative and generally followed instructions. He made no bizarre statements and acted appropriately in light of the circumstances. We hold that the trial court's findings of fact are supported by competent evidence and that

these findings in turn support the court's conclusion that defendant freely, knowingly, intelligently, and voluntarily waived his *Miranda* rights. This assignment of error is overruled.

[10] Defendant's contention that he was denied his right to the effective assistance of counsel is without merit. Defendant argues that this right was denied by the trial court's refusal to hear his counsel's arguments in favor of his motion to suppress. However, after reviewing the portions of the record referenced by defendant, it does not appear that defense counsel ever made any effort to argue in support of defendant's position. It does appear that defense counsel stated to the court that he possessed three cases discussing the State's burden of showing a knowing and voluntary waiver of rights, and that the judge stated that it would not be necessary for him to review those cases. We find nothing in these proceedings which indicates that the trial court denied defendant his right to the effective assistance of counsel. This assignment of error is overruled.

[11] Defendant next contends that the prosecutor's final argument was improper and that he was thus denied his right to a fair trial. At the outset we note that defendant lodged only one objection to the prosecutor's argument. Where a defendant fails to object to the State's closing argument he must show that the argument was so grossly improper that the trial judge should have corrected the argument *ex mero motu. State v. Craig*, 308 N.C. 446, 302 S.E.2d 740, *cert. denied*, 464 U.S. 908, 78 L. Ed. 2d 247 (1983). Defendant contends that the prosecutor's argument violated N.C.G.S. § 15A-1230(a), which prohibits abusive arguments, arguments in which counsel asserts his personal belief as to the truth or falsity of the evidence or the guilt or innocence of the defendant, and arguments based on matters outside the record. We disagree.

The prosecutor argued that the jury had the opportunity to "do something about it, this case, and what this man did. . . ." He argued that the jury had a duty to perform and that the judge would instruct the jury as to its duty. He argued that the jury was the "they" that is often referred to by members of the public when the public says, "[T]hey ought to do something about [the economy, politics, war, Hussein]." The prosecutor's statements regarding his personal thoughts or beliefs did not concern the evidence or defendant's guilt or innocence. The prosecutor further argued that the jury would render a verdict and that it could find defendant

not guilty or not guilty by reason of insanity, but that if it did, "then you just as well take a wreath, a big wreath and hang it on the courthouse door because justice in Halifax County will be dead." Defendant objected to this latter argument.

While it is true that it is improper to argue to a jury that it should convict a defendant based upon anything other than the evidence presented at trial, we find no such argument in the present case. We cannot say that the prosecutor's argument that if defendant was found not guilty, "justice in Halifax County will be dead[,]" was an improper argument. This argument was a hyperbolic expression of the State's position that a not guilty verdict, in light of the evidence of guilt, would be an injustice. Nor can we say that there was anything in the remainder of the prosecutor's argument that was so grossly improper that the trial court should have intervened *ex mero motu*. This assignment of error is overruled.

Defendant brings forth six additional assignments of error. However, defendant candidly concedes that this Court has previously decided, adversely to defendant's position, the issues raised by the first three of these assignments of error and he has expressly abandoned the three remaining assignments of error. For the reasons stated herein, we find no error in the trial.

No error.