NO. COA14-187

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

STATE OF NORTH CAROLINA

v.                                    Mecklenburg County
                                      Nos. 11 CRS 221675—78
JAMES E. FOSTER


Appeal by defendant from judgment entered 12 August 2013 by Judge Anna Mills Wagoner in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 August 2014.

*Attorney General Roy Cooper, by Special Deputy Attorney General Joseph E. Herrin, for the State.*

*Jarvis John Edgerton, IV, for defendant-appellant.*


BRYANT, Judge.


Where our review is not frustrated, defendant cannot establish that he was prejudiced by the trial court's failure to reconstruct arguments made during unrecorded bench conferences. Accordingly, we find no prejudicial error in defendant's trial.

On 23 May 2011, a Mecklenburg County grand jury indicted defendant on two counts of assault with a deadly weapon with intent to kill inflicting serious injury and two counts of assault with a deadly weapon with intent to kill. A trial

commenced on 5 August 2013, in Mecklenburg County Superior Court, the Honorable Anna Mills Wagoner, Judge presiding.

Evidence at trial tended to show that at 2:36 a.m. on 8 May 2011, Charlotte-Mecklenburg Police Department received a 9-1-1 call from 1616 Lynford Drive. Upon arrival, the reporting police officer observed medical personnel outside the residence treating a young male in severe pain. Inside the residence, an adult female was also being attended to by medical personnel. The woman's name was Robin Lewis and the young man was her son, Quinton.[1] While paramedics worked, Lewis stated to the officer that she had been shot by James Foster, defendant. Later that morning, the Charlotte-Mecklenburg Police Department received a 9-1-1 call from 5305 Lyrica Lane informing them that defendant wanted to turn himself in.

Lewis later testified at trial that she had been in a dating relationship with defendant and that the two had lived together for ten months. Lewis had four children—a son, Quinton, another son, and two daughters—who also lived with Lewis and defendant. On the evening of 7 May 2011, Lewis and defendant had an argument that escalated until defendant struck Lewis in the face. Defendant left the home. When he returned,

---

[1] A pseudonym has been used to protect the identity of the minor.

Lewis testified that defendant was intoxicated to the point he vomited on the floor and passed out. Lewis—a licensed practical nurse—became concerned when defendant began sweating profusely. Defendant was a diabetic, and there was a risk defendant could slip into a diabetic coma. Lewis applied ice to cool defendant's body temperature. Defendant remained unconscious for two and a half hours. When defendant awoke, everyone in the residence was awake.

> A. It seems like everything just broke loose. When he first woke up he jumped up saying where's his wallet, where's his keys, somebody took his money, can't find this. . . . [H]e started blaming me. . . . And I was, like, here's your stuff right here.
>
> Q. Where was it?
>
> A. Right there on my bed.
>
> . . .
>
> And he continued to -- I started continuing the conversation about you have to leave.
>
> Q. And how did that go?
>
> A. He said he'd leave and he started grabbing his things, grabbing those steri-lite totes out of the closet, taking them down the steps one by one. . . .
>
> . . .

Q.   How was -- what was his response about moving out? Did he become agitated or angry?

A.   He became angry.

While defendant moved his things out, Lewis and her children gathered on the landing at the top of the stairs leading from the first to second floor. Defendant was at the bottom of the stairs. Lewis testified that at some point she saw that defendant had a gun. While she was trying to push her children back, she heard a lot of shots, and she felt two sharp pains. Defendant then left the residence, and one of Lewis' daughters called 9-1-1. A handgun was later found on the floor near where defendant had been standing. Quinton suffered from two gunshot wounds: one to his intestines and another to his leg. Lewis also suffered two gunshot wounds to her pelvic region.

At the close of the evidence, the jury found defendant guilty of two counts of assault with a deadly weapon with the intent to kill inflicting serious injury and two counts of assault with a deadly weapon. The trial court entered a consolidated judgment in accordance with the jury verdicts and sentenced defendant to an active term of 69 to 92 months. Defendant appeals.

_____

On appeal, defendant argues the trial court committed prejudicial error when it conducted multiple off-the-record bench conferences. Specifically, defendant contends that the failure to record bench conferences amounts to a constitutional violation warranting a new trial. We disagree.

"A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2013).

Here, defendant has couched his contention that the trial court failed to record bench conferences as a constitutional due process violation; however, defendant fails to provide any support for this contention. Moreover, the record does not reflect that defendant raised his constitutional argument before the trial court. *See State v. Garcia*, 358 N.C. 382, 410, 597 S.E.2d 724, 745 (2004) ("It is well settled that constitutional matters that are not 'raised and passed upon' at trial will not be reviewed for the first time on appeal."). Yet despite this initial contention, we note that in his argument defendant cites

as his primary authority our Supreme Court's opinion in *State v. Pittman*, 332 N.C. 244, 420 S.E.2d 437 (1992).

In *Pittman*, the defendant moved for a complete recordation of all proceedings including bench conferences. The trial court held unrecorded bench conferences. On appeal, the defendant charged that the failure to record the bench conferences amounted to a constitutional violation. Our Supreme Court analyzed the issue against General Statutes, section 15A-1241. Notably, in the instant case, defendant does not provide any argument that a constitutional violation occurred at trial; therefore, we review only for possible statutory violation.

Pursuant to General Statutes, section 15A-1241,

> [t]he trial judge must require that the reporter make a true, complete, and accurate record of all statements from the bench and all other proceedings except:
>
> (1) Selection of the jury in noncapital cases;
>
> (2) Opening statements and final arguments of counsel to the jury; and
>
> (3) Arguments of counsel on questions of law.

N.C. Gen. Stat. § 15A-1241(a) (2013). In *State v. Cummings*, our Supreme Court stated that it "[did] not believe the enactment of this statute by the legislature in 1977 was intended to change

the time-honored practice of off-the-record bench conferences between trial judges and attorneys." 332 N.C. 487, 498, 422 S.E.2d 692, 698 (1992). The phrase in subsection (a), "'statements from the bench[,]' does not include private bench conferences between trial judges and attorneys." *Id.* at 497, 422 S.E.2d at 697. "If, however, a party requests that the subject matter of a private bench conference be put on the record for appellate review, section 15A-1241(c) requires the trial judge to reconstruct the matter discussed as accurately as possible." *State v. Blakeney*, 352 N.C. 287, 307, 531 S.E.2d 799, 814 (2000) (citation omitted); *see also* N.C. Gen. Stat. § 15A-1241(c) ("When a party makes an objection to unrecorded statements or other conduct in the presence of the jury, upon motion of either party the judge must reconstruct for the record, as accurately as possible, the matter to which objection was made.").

In *Pittman*, the defendant made a pre-trial motion for complete recordation of all proceedings, specifically including bench conferences. *See Pittman*, 332 N.C. at 250, 420 S.E.2d at 440. Our Supreme Court held that "the trial court, having allowed defendant's motion for complete recordation, should have required recordation of all conferences and its failure to do so

constituted error. We must now determine whether defendant was prejudiced by this error." *Id.* at 250, 420 S.E.2d at 440. After reviewing what occurred prior to and after the bench conferences, the Supreme Court determined that "[b]ased on the record facts and defendant's failure to specifically allege how he was prejudiced by the lack of complete recordation, we hold that the trial court's failure to require complete recordation was harmless beyond a reasonable doubt." *Id.* at 252, 420 S.E.2d at 441.

Here, defendant filed a pretrial motion "to have the Court Reporter record all phases of the proceedings . . . including pre-trial hearings, voir dire, motions, opening statements, and closing arguments." The trial court granted the motion from the bench prior to the commencement of the jury selection.

> [Prosecutor]: Your Honor, I believe [defense counsel] also has a motion for complete recordation. Obviously we're not opposed to that.
>
> THE COURT: I'll allow the motion. That's for jury selection and everything; is that right?
>
> [Defense counsel]: Yes, Your Honor. . . .
>
> THE COURT: . . . [T]he Court will allow the motion for complete recordation without objection.

On appeal, defendant *lists* seventeen instances in which the trial court conducted unrecorded bench conferences and states that each unrecorded conference was a violation of the trial court's order. However, defendant *specifically challenges* only two unrecorded bench conferences. Therefore, we focus only on the two bench conferences defendant discusses to determine whether defendant suffered prejudice from the trial court's failure to record or reconstruct them.[2]

In his first challenge, defendant contends he was prejudiced by the lack of any memorialization of the arguments made at a bench conference during the testimony of Detective Bryan Crum. Detective Crum—assigned to the Violent Crimes Division, homicide, of the Charlotte-Mecklenburg Police Department—met victim Robin Lewis at Carolinas Medical Center the morning she was shot. During the State's examination of Detective Crum, the following exchange occurred:

> Q. Did you make contact with Robin Lewis at the hospital?
>
> A. I did. She was in one of the bays in the emergency department. After she was initially taken care of or settled down with the medical staff, I went to speak with her.

---

[2] Of the remaining fifteen instances, five occurred during jury selection and ten during trial.

Q.     And what did she tell you?

A.     She told me that basically that something had happened earlier in the night, that a person that she lived with -- and I took a statement from her, -- said that someone had come home and --

[Defense counsel]: Objection, Your Honor, asked to be heard.

THE COURT:     Sustained.

[Prosecutor]: Your Honor, may we approach?

[Defense counsel]: Your Honor, I would ask to be heard on the record since we have --

THE COURT:     Just come up here now and afterward we'll do that.

(WHEREUPON, the Court, [both prosecutors], and [defense counsel] conferred off the record. Afterward, the State's examination continued.)

Q.     Did you have a chance to observe Robin Lewis physically, what she looked like once you spoke with her?

A.     I did.

Q.     And what if anything did you notice with regards to any injury?

Here, the trial court's failure to reconstruct the substance of the bench conference for the record was a violation of section 15A-1241(c).  *See* N.C.G.S. ' 15A-1241(c) ("When a party makes an objection to unrecorded statements or other

conduct in the presence of the jury, upon motion of either party the judge must reconstruct for the record, as accurately as possible, the matter to which objection was made."); *see also Blakeney*, 352 N.C. at 307, 531 S.E.2d at 814.

However, on this record as otherwise recorded, we discern no prejudice in the trial court's failure to reconstruct the substance of the bench conference for the record. The transcript reflects that the trial court sustained defendant's objection to the prosecutor's line of questioning. Following the bench conference, the trial court did not amend its ruling and defendant's objection remained sustained. When the prosecutor's examination resumed, Detective Crum was questioned regarding his personal observations of the victim Robin Lewis rather than her statements to him. From this context, it appears defendant's objection was made on hearsay grounds, and there is no indication that the parties at the bench conference discussed any matter other than the hearsay nature of the prosecutor's examination. Therefore, defendant's argument that appellate review was frustrated by the lack of recordation or reconstruction is without merit.

Defendant also asserts that he was prejudiced by the lack of recordation during a bench conference held during defendant's cross-examination of Robin Lewis.

> Q. Well, your blood alcohol level was high, wasn't it?
>
> A. I don't know.
>
> Q. Have you been allowed to see a copy of your medical report?
>
> A. No, ma'am.
>
> Q. If I showed you a copy of your medical report would it help refresh your recollection about what your level of intoxication was?
>
> A. You can show it to me, but I know what my level of intoxication is. I was not intoxicated.
>
> . . .
>
> [Prosecutor]: Your Honor, I would ask to be heard.
>
> THE COURT: All right, come up here. (WHEREUPON, the Court, [both prosecutors, and defense counsel] conferred off the record.)
>
> THE COURT: I'll sustain your objection. Rephrase your question.
>
> Q. Ms. Lewis, I'm going to ask you in terms of how much you had to drink that night, you're aware that the hospital took your blood; correct?
>
> A. Yes, ma'am.

Defendant contends that the substance of the bench conference cannot be ascertained from the context of the examination and as such, appellate review is frustrated to his prejudice. Again, we disagree.

Defendant attempted to present Lewis with her medical report from the hospital prepared on the night of her shooting. Specifically, defendant asked, "If I showed you a copy of your medical report would it help *refresh your recollection* about what your level of intoxication was?" Lewis responded, "I know what my level of intoxication [was]." The prosecutor then asked to be heard, and during the bench conference, apparently, lodged an objection. While the exact content of the conference is unclear, it is quite apparent that the document defendant wished the witness to examine was not needed to refresh her recollection and, therefore, would not be proper cross-examination material. *See* N.C. Gen. Stat. ' 8C-1, Rule 803(5) (2013) ("Recorded Recollection"). A recorded recollection, as defined by our Rules of Evidence, is "[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable [her] to testify fully and accurately[.]" *Id.* ' 8C-1, Rule 803(5).

Under present recollection refreshed, the

> witness' memory is refreshed or jogged through the employment of a writing, diagram, smell or even touch, and [she] testifies from [her] memory so refreshed. The evidence presented at trial comes from the witness' memory, not from the aid upon which the witness relies[.]

*State v. Ysut Mlo*, 335 N.C. 353, 367, 440 S.E.2d 98, 104 (1994) (citations and quotations omitted).

After the conference, the trial court sustained the objection on the record and had defendant re-phrase the question. Robin Lewis then testified unequivocally, "I know what my level of intoxication [was]. I was not intoxicated." Lewis did not indicate that her memory was insufficient. Therefore, presentation of the medical report was not appropriate as either past recollection recorded or present recollection refreshed. *See* N.C.G.S. ' 8C-1, Rule 803(5); *Ysut Mlo*, 335 N.C. at 367, 440 S.E.2d at 104. Given the context, our review of the trial court's ruling is not frustrated. We see no error in the trial court's ruling that sustained the prosecutor's objection to an improper question. Accordingly, defendant's arguments are overruled.

No prejudicial error.

Chief Judge McGEE and Judge STROUD concur.