STATE OF NORTH CAROLINA v. DAVID ALTON LEWIS

No. 444A96

(Filed 9 May 1997)

**Homicide § 482 (NCI4th)— deliberation—supplemental instruction**

> The trial court's supplemental instruction in a first-degree murder case, given in response to the jury's request for a clearer definition of deliberation, that deliberation means (1) that the killing was considered or planned in advance, (2) that no particular length of time was required for such advance planning, and (3) that the killing was different from one done in response to a suddenly aroused passion was a correct statement of the law and substantially conformed with defendant's requested instruction that deliberation requires the "weighing in the mind of consequences of a course of conduct, as distinguished from acting upon a sudden impulse without exercise of reasoning power."

**Am Jur 2d, Homicide § 501.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Battle, J., on 3 July 1995 in Superior Court, Orange County, upon a jury verdict

STATE v. LEWIS

[346 N.C. 141 (1997)]

of guilty of first-degree murder. Heard in the Supreme Court 18 March 1997.

*Michael F. Easley, Attorney General, by John F. Maddrey, Assistant Attorney General, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

ORR, Justice.

This case arises out of the shooting death of James "Buck" Copeland on 14 September 1994 at the McDonald's restaurant on Franklin Street in Chapel Hill, North Carolina. Defendant was indicted for this crime on 10 October 1994 and was tried noncapitally before a jury. The jury returned a verdict finding defendant guilty of first-degree murder. The trial court imposed a mandatory sentence of life imprisonment for this conviction.

After consideration of the one assignment of error brought forward on appeal by defendant and a thorough review of the transcript of the proceedings, the record on appeal, the briefs, and oral arguments, we conclude that defendant received a fair trial, free from prejudicial error. For the reasons set forth below, we affirm his conviction and sentence.

At trial, the State's evidence tended to show the following: Frank McKnight testified that on 14 September 1994, he arrived at McDonald's at approximately 8:45 a.m. While waiting for a friend to arrive, McKnight noticed that defendant was sitting in the back of the restaurant. A few minutes after his friend arrived, McKnight observed Buck Copeland come into the restaurant and sit down approximately eight feet away from defendant. McKnight testified that just before 9:30 a.m., he saw defendant walk up to Copeland with a sawed-off shotgun, put it to Copeland's head, and fire the weapon.

Barbara Turner testified that she saw defendant get up from the back booth and speak with Copeland briefly before exiting the restaurant. Turner further stated that she observed defendant come back into the restaurant, walk up to Copeland, and say something like, "I guess you remember me now." Turner then heard a loud noise, turned around, and saw defendant leave through the side door as Copeland slumped down in his seat. Turner then looked out the window and saw defendant backing out of the parking lot in a Mazda truck.

Kirk Schablik testified that he observed defendant slowly raise the shotgun, "very calm, very steady"; put it to Copeland's head; and pull the trigger. After the shot, he heard defendant say something like, "That will teach you to talk to me that way." Schablik further testified that he did not think anything violent was going to happen because defendant "seemed very calculated."

Valerie Foushee, an employee of the Chapel Hill Police Department, testified that on 14 September 1994, defendant entered the building and laid a weapon on the counter. Foushee testified that after laying the weapon down, defendant said, "I'm the one that was at McDonald's."

William Frick, an investigator with the Chapel Hill Police Department, established that defendant's 1984 Mazda truck was parked in front of the police station and that he saw a spent shotgun shell on the floorboard of the passenger's side. After obtaining defendant's consent to search the vehicle, the police retrieved the shotgun shell from the truck, and defendant indicated that it was the shell which he had removed from the gun that he had fired at McDonald's. Special Agent Michael Gavin, an expert in the field of firearm identification, testified that the shotgun shell retrieved from defendant's truck had been fired from the gun that defendant placed on the counter at the Chapel Hill police station.

Dr. Thomas Sporn, the assistant chief medical examiner for the State of North Carolina, testified that the cause of the victim's death was a shotgun wound to the head fired from five to six inches away.

Defendant also presented testimony during the trial. John Austin, an employee of the Orange County Sheriff's Department, testified that defendant's behavior was very unusual when he was brought to jail on 14 September 1994. Austin stated that defendant appeared to be very depressed, was placed on suicide watch, and refused to eat anything for three days.

Naomi Lewis, defendant's mother, and Dennis Lewis, defendant's brother, testified about several incidents of strange behavior that resulted in defendant injuring himself.

Dr. John Warren, who was qualified as an expert in medical and forensic psychology, evaluated defendant. Dr. Warren testified that, in his opinion, defendant was suffering from residual schizophrenia at the time of the offense such that his mental state was impaired. Dr.

STATE v. LEWIS

[346 N.C. 141 (1997)]

Warren further stated that it was his opinion that defendant's mental illness caused him to develop recurrent, obsessive, and paranoid thoughts about Copeland, which resulted in the psychotic belief that Copeland was controlling him and affecting his life in many ways.

In the only assignment of error brought forward by defendant on appeal, defendant contends that the trial court committed prejudicial error when it "reinstructed" the jury on the required element of "deliberation." Defendant notes that a critical part of the defense was his inability, caused by his schizophrenia, to adequately weigh the consequences of his acts. Defendant argues that the definition he tendered would have clarified the weighing process required for deliberation. Defendant contends that the trial court's actions, as set forth below, impaired the pursuit of his defense of lack of mental capacity and violated his state and federal constitutional rights. We disagree.

In the present case, the trial court instructed the jury on the elements of first-degree murder. The instructions which were given comported with the appropriate pattern jury instructions on first-degree murder. As to deliberation, the trial court instructed that the State must prove

that the defendant acted with deliberation, which means that he acted while he was in a cool state of mind. This does not mean that there had to be a total absence of passion or emotion. If the intent to kill was formed with a fixed purpose, not under the influence of some suddenly aroused violent passion, it is immaterial that the defendant was in a state of passion or [was] excited when the intent was carried into effect.

Defense counsel did not except to these initial instructions given by the trial court.

After deliberations had begun, the jury submitted a note to the court, asking, "Could we get a clearer definition of what deliberation means, what constitutes a 'cool state of mind.' " Defense counsel then requested the trial court to use "at least in whole or in part" the following language defining "deliberation" as

the act of weighing and examining the reasons for and against a contemplative act or course of conduct, or a choice of act or means. As used in the context of first[-]degree murder, it is weighing—a weighing in the mind of the consequences of a course of conduct, as distinguished from acting upon a sudden impulse without exercise of reasoning power.

After hearing the objections of the prosecutor, Judge Battle had defense counsel re-read the requested language and then decided to use the language which he had previously prepared instead of defendant's tendered instruction.

When the jury returned to the courtroom for the additional instructions, Judge Battle stated:

> Members of the jury, I received your note, and I'm not really sure that I can be of too much help to you, but I will say this, in addition to the instructions that I've already given you, of course: Deliberation means that the killing was considered or planned in advance—no particular length of time is required—as opposed to something done as a response to some suddenly aroused violent passion.

Following the jury's return to the jury room, defense counsel noted an exception to the instruction and argued that the reinstruction went to the issue of premeditation. Defense counsel tendered *State v. Buchanan*, 287 N.C. 408, 215 S.E.2d 80 (1975), as support for the requested instruction.

N.C.G.S. § 15A-1234(a)(1) provides that "[a]fter the jury retires for deliberation, the judge may give appropriate additional instructions to . . . [r]espond to an inquiry of the jury made in open court." N.C.G.S. § 15A-1234(a)(1) (1988). "When the trial court gives such additional instructions, it may also give or repeat other instructions to avoid giving undue prominence to the additional instructions." *State v. Weddington*, 329 N.C. 202, 210, 404 S.E.2d 671, 677 (1991). Further, "[w]hether the trial court instructs using the exact language requested by counsel is a matter within its discretion and will not be overturned absent a showing of abuse of discretion." *State v. Herring*, 322 N.C. 733, 742, 370 S.E.2d 363, 369 (1988). As this Court has previously stated, "[t]he trial court is not required to frame its instructions with any greater particularity than is necessary to enable the jury to understand and apply the law to the evidence bearing upon the elements of the crime charged." *Weddington*, 329 N.C. at 210, 404 S.E.2d at 677.

In *State v. Buchanan*, 287 N.C. 408, 215 S.E.2d 80, the case relied on by defendant, this Court discussed the concepts of premeditation and deliberation and stated that

> "[i]n order to constitute deliberation and premeditation, something more must appear than the prior existence of actual malice

or the presumption of malice which arises from the use of a deadly weapon. Though the mental process may require but a moment of thought, it must be shown, so as to satisfy the jury beyond a reasonable doubt, that the prisoner weighed and balanced the subject of killing in his mind long enough to consider the reason or motive which impelled him to the act, and to form a fixed design to kill in furtherance of such purpose or motive."

*Id.* at 417, 215 S.E.2d at 85 (quoting *State v. Thomas*, 118 N.C. 1113, 1123, 24 S.E. 431, 434 (1896)).

In defining deliberation, this Court has held that "[d]eliberation means that defendant carried out the intent to kill in a cool state of blood, 'not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation.' " *State v. Crawford*, 344 N.C. 65, 74, 472 S.E.2d 920, 926 (1996) (quoting *State v. Hamlet*, 312 N.C. 162, 170, 321 S.E.2d 837, 842-43 (1984)). Further, in *State v. Hutchins*, 303 N.C. 321, 279 S.E.2d 788 (1981), this Court stated that "[d]eliberation does not require brooding or reflection for any applicable length of time but connotes the execution of an intent to kill in a cool state of blood without legal provocation in furtherance of a fixed design." *Id.* at 344, 279 S.E.2d at 802.

In considering the instruction at issue here, we conclude that the trial court properly instructed the jury. First, the primary instructions on deliberation were proper and comported with the pattern jury instructions on first-degree murder. Second, the record shows that the jury had the benefit of a written copy of the trial court's instructions because Judge Battle had the bailiff give each juror a copy so that he or she could follow along with his charge. Third, the trial judge explicitly qualified his response to the jury's question with the statement that his answer was "in addition to the instructions that I've already given you." Finally, the trial court's additional instructions to the jury did not misstate the law and sufficiently complied with defendant's requested instruction. This Court has previously stated that

[a]s long as the trial court gives a requested instruction in substance, it is not error for a trial court to refuse to give a requested instruction verbatim, even if the request is based on language from this Court.

*State v. Harden*, 344 N.C. 542, 555, 476 S.E.2d 658, 664 (1996), *cert. denied*, —— U.S. ——, —— L. Ed. 2d —— , 65 U.S.L.W. 3647 (1997).

Here, the substance of the instruction requested by defendant was that deliberation requires the "weighing in the mind of consequences of a course of conduct, as distinguished from acting upon a sudden impulse without exercise of reasoning power." The language used by Judge Battle in response to the jury's question concerning "deliberation" included three concepts for the jury to consider: (1) that the killing was considered or planned in advance, (2) that no particular length of time was required for such advance planning, and (3) that a killing done with deliberation is different from one done in response to a suddenly aroused violent passion. These concepts substantially conformed with defendant's requested instruction and are a correct statement of the law.

The supplemental instructions of Judge Battle, coupled with the principal instructions he first gave, correctly informed the jury as to the applicable law and in no way prejudiced defendant's right to a fair trial. Accordingly, this assignment of error is overruled.

NO ERROR.