BERGER, Judge.
 

 *896
 

 *194
 
 On July 18, 2016, Randy Steven Cagle ("Defendant") was found guilty for the murder of both Tyrone Marshall ("Marshall") and Davida Stancil ("Stancil"). Defendant appeals, arguing that the trial court erred when it did not: (1) include the specific intent jury instruction in the final mandate; (2) instruct the jury with Defendant's requested instruction on deliberation; and (3) intervene
 
 ex mero motu
 
 to strike statements made by the prosecutor during closing arguments. We find no error.
 

 Factual and Procedural Background
 

 On the afternoon of May 7, 2011, Defendant purchased approximately $20.00 of cocaine from Marshall. Defendant called Marshall to complain about the product, and Marshall went to see Defendant at his home. Once Marshall was inside Defendant's home, a fight ensued and Marshall was fatally beaten and stabbed. Defendant then went outside to Marshall's car. Stancil was waiting in the passenger seat with her seat belt still buckled. Defendant broke the passenger window of the vehicle with a baseball bat and fatally stabbed Stancil.
 

 Defendant attempted to dispose of the evidence of his crime by driving Marshall's car about three-tenths of a mile away from his home and abandoning it. Defendant also attempted to clean the crime scene with bleach, and hid two knives under the sink, burned some of Stancil's belongings, and washed his clothes.
 

 The following day, Marshall's abandoned car was found. His body was in the car's backseat and Stancil's body was in the front passenger seat with her seat belt still buckled. Stancil had twenty puncture wounds to her head, jaw, neck, chest and abdomen; defensive wounds on her hands and forearms; and her seatbelt had puncture damage as well. There was broken glass from the passenger window on the driver's seat, and shards of tinted glass were found at Defendant's home. Marshall had puncture wounds to the back of his head, and a very large, gaping wound on the front of his neck.
 

 *195
 
 Defendant was arrested, and on June 6, 2011, he was indicted on two counts of first degree murder. Prior to his arrest, a detective conducted a pat down search and noticed one of Defendant's fingers "had a small cut," but otherwise he had no wounds or bruising.
 

 The State held a Rule 24 hearing on June 28 and announced that it would seek the death penalty. Prior to trial, Defendant filed notice of his intent to introduce evidence of self-defense, mental infirmity, diminished capacity, involuntary intoxication, and/or voluntary intoxication. Defendant also requested before trial that the jury be instructed with additional language on premeditation and deliberation and on specific intent. Defendant's requests were denied.
 

 At trial, Defendant's mental state at the time of the murders was at issue. Multiple medical experts testified and provided their opinions.
 

 During the jury charge conference, the trial court denied Defendant's renewed request for the special instruction concerning Defendant's mental capacity, but did include Defendant's requested instruction on voluntary intoxication. The trial court also denied Defendant's renewed request for a special instruction on premeditation and deliberation, but did not prevent Defendant from arguing Defendant's requested instruction to the jury.
 

 After closing arguments had concluded, Defendant was convicted of two counts of first degree murder. Following the guilt/innocence phase, a capital sentencing hearing was held, and the jury returned recommendations of life imprisonment for both counts. The trial court imposed two consecutive sentences of life without parole.
 

 Defendant timely appeals, arguing that the trial court erred when it: (1) did not give the requested instruction on specific intent in the
 
 *897
 
 final mandate; (2) did not give the requested instruction on premeditation and deliberation; and (3) did not intervene
 
 ex mero motu
 
 during the prosecutor's closing argument. We find no error.
 

 I.
 
 Jury Instructions
 

 Defendant first contends that the trial court erred when it did not include the specific intent instruction in its final mandate to the jury, and when it did not give his requested instruction on premeditation and deliberation. We disagree.
 

 "Whether the trial court instructs using the exact language requested by counsel is a matter within its discretion and will not be overturned absent a showing of abuse of discretion."
 

 *196
 

 State v. Lewis
 
 ,
 
 346 N.C. 141
 
 , 145,
 
 484 S.E.2d 379
 
 , 381 (1997) (citations, quotation marks, and brackets omitted). "[W]hen a request is made for a specific instruction that is supported by the evidence and is a correct statement of the law, the court, although not required to give the requested instruction verbatim, must charge the jury in substantial conformity therewith."
 
 State v. Daughtry
 
 ,
 
 340 N.C. 488
 
 , 516,
 
 459 S.E.2d 747
 
 , 761 (1995) (citation and quotation marks omitted). However,
 

 [a] party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict, stating distinctly that to which objection is made and the grounds of the objection; provided that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.
 

 N.C.R. App. P. 10(a)(2).
 

 If an instructional error is not preserved below, it nevertheless may be reviewed for plain error "when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4).
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." Moreover, because plain error is to be "applied cautiously and only in the exceptional case," the error will often be one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (quoting
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 661,
 
 300 S.E.2d 375
 
 , 378-79 (1983) (citations and quotation marks omitted)).
 

 Finally, "[a]n instruction to a jury will not be viewed in isolation, but rather must be considered in the context of the entire charge. Instructions that as a whole present the law fairly and accurately to the jury will be upheld."
 
 State v. Roache
 
 ,
 
 358 N.C. 243
 
 , 303,
 
 595 S.E.2d 381
 
 , 419 (2004) (citations omitted).
 

 *197
 
 A.
 
 Specific Intent Instruction
 

 Defendant argues that the trial court erred when it did not include the specific intent instruction in the final mandate. Defendant contends in the alternative that if we determine that this issue was not properly preserved, the trial court's failure to include a specific intent instruction in the final mandate constitutes plain error.
 

 Defendant had filed a request for a special instruction on July 6, 2016, in which he requested that additional language regarding specific intent be added to the pattern jury instruction for first degree murder. However, in this request, Defendant did not ask for that special instruction to be included in the final mandate. During the charge conference, Defendant renewed his special instruction request, which was denied. Again, Defendant did not request that the specific intent instruction be included in the final mandate. Moreover, after the trial court had
 
 *898
 
 instructed the jury, and upon the trial court's inquiry as to whether either party had any objections to the instructions as given, Defendant did not object on the grounds that the trial court should have included the specific intent instruction in its final mandate. Because Defendant did not object on the grounds that the specific intent instruction should have been included in the final mandate during either the charge conference or after the jury had been charged, Defendant has not properly preserved this issue for appellate review pursuant to Rule 10(a)(2) of the North Carolina Rules of Appellate Procedure.
 

 However, because this error was not preserved, we must determine whether "the trial court committed plain error in omitting specific intent from the final mandate." Defendant argues that the trial court's error had a probable impact on the jury's finding that he was guilty because, "[h]ad one juror been in doubt about [Defendant's] ability to form specific intent, the result of this case could have been a verdict of second-degree murder." We disagree and do not find plain error.
 

 In North Carolina, it is not necessarily error for the trial court to exclude a portion of a requested jury instruction in its final mandate where this exclusion "could not have created confusion in the minds of the jurors as to the State's burden of proof."
 
 State v. Pittman
 
 ,
 
 332 N.C. 244
 
 , 258-59,
 
 420 S.E.2d 437
 
 , 445 (1992). Additionally, when the trial court includes in its jury charge "an instruction that the jury could consider defendant's mental condition in connection with his ability to formulate a specific intent to kill," it need "not include a similar charge in its final mandate."
 
 Id.
 
 at 258,
 
 420 S.E.2d at 445
 
 ,
 
 332 N.C. 244
 
 . Thus, when the trial court gives "the substance of the instruction defendant requested," omission of the
 
 *198
 
 requested instruction from the final mandate does not necessarily constitute plain error.
 
 Daughtry
 
 ,
 
 340 N.C. at 516
 
 ,
 
 459 S.E.2d at 761
 
 .
 

 In the present case, Defendant requested an instruction before trial on his mental condition at the time the crime was alleged to have been committed and the effect that voluntary intoxication could have on his ability to form specific intent. When the trial court charged the jury, it gave the North Carolina Pattern Instruction 305.11 on voluntary intoxication and its effect on specific intent twice, once for each of the two victims. This particular instruction does not require that the trial court restate the instruction on specific intent in the final mandate, and the trial court did not err in excluding it from the final mandate.
 

 Moreover, this Court has addressed this allegation of error before, and we are bound by precedent.
 
 See
 

 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").
 

 In
 
 State v. Storm
 
 , this Court reviewed for plain error the exclusion from the final mandate of an instruction that the jury could consider defendant's mental condition with regard to his ability to formulate specific intent.
 
 State v. Storm
 
 ,
 
 228 N.C. App. 272
 
 ,
 
 743 S.E.2d 713
 
 (2013). This Court stated:
 

 In
 
 State v. Pittman
 
 ,
 
 332 N.C. 244
 
 ,
 
 420 S.E.2d 437
 
 (1992), our Supreme Court held that the trial court did not err by denying defendant's request to include an instruction on diminished capacity in its final mandate.
 
 Id
 
 . at 258-59,
 
 420 S.E.2d at 445
 
 [
 
 332 N.C. 244
 
 ]. Examining the charge as a whole, the Supreme Court determined that the jury could not have been confused as to the State's burden of proof because "[t]he court included in its charge an instruction that the jury could consider defendant's mental condition in connection with his ability to formulate a specific intent to kill."
 
 Id
 
 . Similarly in
 
 State v. Daughtry
 
 ,
 
 340 N.C. 488
 
 ,
 
 459 S.E.2d 747
 
 (1995), when the trial court gave the substance of the instruction defendant requested, the omission of a final mandate including a voluntary intoxication instruction
 
 *899
 
 did not constitute plain error.
 
 Id
 
 . at 516,
 
 459 S.E.2d at 761
 
 [
 
 340 N.C. 488
 
 ].
 

 Storm
 
 ,
 
 228 N.C. App. at 276
 
 ,
 
 743 S.E.2d at 716
 
 .
 

 *199
 
 This reasoning and conclusion applies to the error alleged by Defendant here, and we are therefore compelled to come to the same conclusion:
 

 Examining the jury instructions as a whole, the trial court's instructions do not constitute plain error. Following the instructions on first-degree and second-degree murder, the trial court charged the jury on diminished capacity and voluntary intoxication. The trial court's instruction followed the pattern jury instructions and the trial court gave the instruction twice, once for diminished capacity and once for voluntary intoxication. The voluntary intoxication and diminished capacity instructions each contained mandates, stating that if the jury "[had] reasonable doubt as to whether the defendant formulated the specific intent required for conviction of first-degree murder," they were not to return a verdict of guilty of first-degree murder. These instructions appropriately state the law on diminished capacity and voluntary intoxication.
 
 See
 

 State v. Carroll
 
 ,
 
 356 N.C. 526
 
 , 539-40,
 
 573 S.E.2d 899
 
 , 909 (2002) (finding no plain error where the trial court gave pattern jury instructions on diminished capacity). Based upon the facts of this case and considering the trial court's jury instructions as a whole, defendant cannot meet his high burden of showing that the trial court committed plain error.
 

 Id
 
 . at 276-77,
 
 743 S.E.2d at 717
 
 .
 

 Thus, the trial court did not err in excluding the specific intent instruction from the instruction's final mandate. Accordingly, the trial court did not err and Defendant cannot argue plain error.
 

 B.
 
 Premeditation and Deliberation Instruction
 

 Defendant next argues that he was prejudiced by the trial court's failure to give his requested instruction on premeditation and deliberation drawn from
 
 State v. Buchanan
 
 ,
 
 287 N.C. 408
 
 ,
 
 215 S.E.2d 80
 
 (1975). Defendant specifically requested that the following suggested language from
 
 State v. Buchanan
 
 be included in his requested instruction: "for the premeditation the killer asks himself the question, 'Shall I kill him?'. The intent to kill aspect of the crime is found in the answer, 'Yes, I shall.' The deliberation part of the crime requires a thought like, 'Wait, what about the consequences? Well, I'll do it anyway.' "
 
 State v. Buchanan
 
 ,
 
 287 N.C. 408
 
 , 418,
 
 215 S.E.2d 80
 
 , 86 (1975) (citation omitted). We disagree.
 

 *200
 
 Whether the trial court instructs the jury using the pattern jury instructions or "using the exact language requested by counsel is a matter within its discretion and will not be overturned absent a showing of abuse of discretion."
 
 Lewis
 
 ,
 
 346 N.C. at 145
 
 ,
 
 484 S.E.2d at 381
 
 (citation omitted). "As this Court has previously stated, the trial court is not required to frame its instructions with any greater particularity than is necessary to enable the jury to understand and apply the law to the evidence bearing upon the elements of the crime charged."
 
 Id
 
 . (
 
 purgandum
 
 ). Furthermore,
 

 [t]his Court has consistently held that a trial court is not required to give a defendant's requested instruction verbatim. Rather, when the defendant's request is correct in law and supported by the evidence, the court must give the instruction in substance. This rule applies even when the requested instructions are based on language from opinions of the Supreme Court of North Carolina.
 

 State v. Hobbs
 
 , --- N.C. App. ----, ----,
 
 817 S.E.2d 779
 
 , 784-85 (2018) (citations and brackets omitted).
 

 In defining deliberation, this Court has held that deliberation means that defendant carried out the intent to kill in a cool state of blood, not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. Further, this Court stated that deliberation does not
 
 *900
 
 require brooding or reflection for any applicable length of time but connotes the execution of an intent to kill in a cool state of blood without legal provocation in furtherance of a fixed design.
 

 Lewis
 
 ,
 
 346 N.C. at 146
 
 ,
 
 484 S.E.2d at 381-82
 
 (
 
 purgandum
 
 ). "Premeditation and deliberation are ordinarily not susceptible to proof by direct evidence and therefore must usually be proven by circumstantial evidence."
 
 State v. Leazer
 
 ,
 
 353 N.C. 234
 
 , 238,
 
 539 S.E.2d 922
 
 , 925 (2000) (citation and quotation marks omitted).
 

 Here, Defendant filed a request for a special jury instruction on premeditation and deliberation, based on
 
 Buchanan
 
 , which was denied. Defendant specifically argues that, unlike his requested instruction, the pattern jury instruction neither adequately defines deliberation nor adequately addresses the requirement that, a defendant must have been able to consider the consequences of his actions for guilt to be established. Defendant requested the following instruction:
 

 *201
 
 The required intent to kill must be turned over in the mind in order for the mental process of premeditation and deliberation to transpire. You may think of premeditation as the killer asking himself the question, "Shall I kill?," however long this process takes. Deliberation is then found in a process like asking, "Wait, what about the consequences? Well, I'll do it anyway." Unless the state proves to you beyond a reasonable doubt that the defendant was able to and did in fact engage in both processes, you must find the defendant not guilty of first degree murder on the basis of premeditation and deliberation.
 

 The request for this instruction was denied, and the trial court instructed the jury on deliberation and premeditation using North Carolina Pattern Instruction 206.10, which states in pertinent part:
 

 ... the State must prove to you ... beyond a reasonable doubt ...
 

 Fifth, that the Defendant acted with deliberation, which means that the Defendant acted while the Defendant was in a cool state of mind. This does not mean that there had to be a total absence of passion or emotion. If the intent to kill was formed with a fixed purpose, not under the influence of some suddenly aroused, violent passion, it is immaterial that the Defendant was in a state of passion or excited when the intent was carried into effect.
 

 Members of the jury, neither premeditation nor deliberation is usually susceptible of direct proof. They may be proved by circumstances from which they may be inferred, such as the lack of provocation by Mr. Marshall; conduct of the Defendant before, during, and after the killing; threats and declarations of the Defendant; use of grossly excessive force; infliction of lethal wounds after Mr. Marshall is felled; brutal or vicious circumstances of the killing; manner in - manner in which or means by which the killing was done; ill will between the parties.
 

 Defendant takes issue with the fact that the trial court's instruction did not "explain[ ] what deliberation means." However, "[t]he trial court is not required to frame its instructions with any greater particularity than is necessary to enable the jury to understand and apply the
 
 *202
 
 law to the evidence bearing upon the elements of the crime charged."
 
 Lewis
 
 ,
 
 346 N.C. at 145
 
 ,
 
 484 S.E.2d at 381
 
 (citations and quotation marks omitted).
 

 The trial court made a reasoned decision to use the pattern instruction on deliberation, which defined and provided examples of deliberation. Moreover, because the trial court's instruction on deliberation was a correct statement of the law arising from the evidence presented, comported with the pattern jury instruction, and embraced the substance of Defendant's requested instruction, we find no error.
 

 Defendant also asserts that he is entitled to a new trial because he was prejudiced by the omission of his requested instruction. In support of his argument, Defendant cites to North Carolina General Statute Section 15A-1443, which states:
 

 *901
 
 (a) A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.
 

 (b) A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.
 

 N.C. Gen. Stat. § 15A-1443(a), (b) (2017).
 

 Defendant contends that he was prejudiced by the trial court's failure to provide his requested instruction on deliberation because it was relevant to his defense. He further asserts that "if even one juror had reasonable doubt, based on the evidence, that [Defendant] was unable to deliberate his actions and consider the consequences of them, the outcome of the trial might have been different." However, Defendant cannot show prejudice because we have determined that the trial court did not err.
 

 "The nature and number of the victim's wounds is another indicator of premeditation and deliberation. 'The premise of [this] theory of premeditation and deliberation is that when numerous wounds are inflicted,
 
 *203
 
 the defendant has the opportunity to premeditate and deliberate from one blow to the next.' "
 
 Leazer
 
 ,
 
 353 N.C. at 239
 
 ,
 
 539 S.E.2d at 926
 
 (quoting
 
 State v. Austin
 
 ,
 
 320 N.C. 276
 
 , 295,
 
 357 S.E.2d 641
 
 , 653 (1987) ) (brackets omitted). At trial, it was revealed that Marshall had multiple lethal and nonlethal injuries, including stab wounds, cuts and punctures, and multiple blunt-force injuries on his head, chest, back, abdomen, arms, and hands. After inflicting these injuries to Marshall, Defendant walked outside and towards Marshall's vehicle. Defendant broke the passenger window and stabbed Stancil twenty times in her head, jaw, neck, chest, and abdomen while she was still seated in the vehicle. Stancil also had at least eight severe defensive wounds on her hands and forearms. "No matter what defendant's intent may have been before he inflicted the first wound, there was adequate time between each blow for defendant to have premeditated and deliberated his actions."
 
 Leazer
 
 ,
 
 353 N.C. at 239
 
 ,
 
 539 S.E.2d at 926
 
 . There was such a quantum of evidence from which the jury could find premeditation and deliberation that Defendant would be unable to show prejudice, regardless of which definition was used.
 

 Furthermore, Section 15A-1443(b) is inapplicable because Defendant did not raise any constitutional issues with these jury instructions, either during the jury charge conference or after the charge had been given to the jury. "It is well settled that constitutional matters that are not raised and passed upon at trial will not be reviewed for the first time on appeal."
 
 State v. Garcia
 
 ,
 
 358 N.C. 382
 
 , 410,
 
 597 S.E.2d 724
 
 , 745 (2004) (citation and quotation marks omitted). Thus, any constitutional issues Defendant has raised for the first time on appeal were not preserved for appellate review.
 
 See
 
 N.C.R. App. P. 10(a)(2).
 

 II.
 
 Closing Arguments
 

 Defendant further contends that the trial court should have intervened
 
 ex mero motu
 
 to strike statements made by the prosecutor during closing arguments that described Defendant as evil and disparaged Defendant's witnesses. We disagree.
 

 The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene
 
 ex mero motu
 
 . In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety
 
 *902
 
 that the trial court, in
 
 *204
 
 order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.
 

 State v. Jones
 
 ,
 
 355 N.C. 117
 
 , 133,
 
 558 S.E.2d 97
 
 , 107 (2002) (citation omitted).
 

 [W]hen defense counsel fails to object to the prosecutor's improper argument and the trial court fails to intervene, the standard of review requires a two-step analytical inquiry: (1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's right to a fair trial.
 

 State v. Huey
 
 ,
 
 370 N.C. 174
 
 , 179,
 
 804 S.E.2d 464
 
 , 469 (2017). Only where this Court "finds both an improper argument
 
 and
 
 prejudice will this Court conclude that the error merits appropriate relief."
 

 Id.
 

 (emphasis added). To establish prejudice, the "defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair."
 
 State v. Waring
 
 ,
 
 364 N.C. 443
 
 , 499-500,
 
 701 S.E.2d 615
 
 , 650 (2010). Also, when this Court is asked to determine the impropriety of a prosecutor's argument, such that it may violate a defendant's right to a fair trial, "[f]air consideration must be given to the context in which the remarks were made and to the overall factual circumstances to which they referred."
 
 State v. Moseley
 
 ,
 
 338 N.C. 1
 
 , 50,
 
 449 S.E.2d 412
 
 , 442 (1994) (citation and quotation marks omitted).
 

 A well-reasoned, well-articulated closing argument can be a critical part of winning a case. However, such argument, no matter how effective, must: (1) be devoid of counsel's personal opinion; (2) avoid name-calling and/or references to matters beyond the record; (3) be premised on logical deductions, not on appeals to passion or prejudice; and (4) be constructed from fair inferences drawn only from evidence properly admitted at trial.
 

 State v. Matthews
 
 ,
 
 358 N.C. 102
 
 , 112,
 
 591 S.E.2d 535
 
 , 542 (2004) (citation omitted). Furthermore, an argument must avoid base tactics such as "arguing a witness is lying solely on the basis that he will be compensated."
 
 Huey
 
 ,
 
 370 N.C. at 187
 
 ,
 
 804 S.E.2d at 474
 
 .
 

 Defendant first contends that it was grossly improper for the prosecutor to refer to Defendant as evil during closing arguments. However,
 
 *205
 
 "[t]he appellate courts of this State have declined to reverse convictions based on closing arguments referring to defendants [as 'vile', 'amoral', 'wicked', and 'evil'] or similar language."
 
 State v. Bullock
 
 ,
 
 178 N.C. App. 460
 
 , 475,
 
 631 S.E.2d 868
 
 , 878 (2006) (citing
 
 State v. Flowers
 
 ,
 
 347 N.C. 1
 
 , 37-38,
 
 489 S.E.2d 391
 
 , 412 (1997) ;
 
 State v. Larrimore
 
 ,
 
 340 N.C. 119
 
 , 163,
 
 456 S.E.2d 789
 
 , 812-13 (1995) ;
 
 State v. Riley
 
 ,
 
 137 N.C. App. 403
 
 , 412-13,
 
 528 S.E.2d 590
 
 , 596-597 (2000) ;
 
 State v. Frazier
 
 ,
 
 121 N.C. App. 1
 
 , 16,
 
 464 S.E.2d 490
 
 , 498 (1995) ).
 

 Here, Defendant challenges the prosecutor's use of the word evil during the following parts of closing arguments:
 

 Evil at his core, his rotten core, evil, and there's no other way to explain what you have seen over the last week and a half but his evil. You cannot butcher two people, butcher them, cover yourself in their life's blood, and then twenty-four hours later sit in an interview with two investigators and laugh and joke. There's no other word for it than evil.
 

 ....
 

 The problem with evil is that when you look into the abyss of human evil, the darkness, it is frightening. It is disturbing. And reasonable, good people don't want to admit that that kind of evil walks among us.
 

 There's a saying that when you look into the abyss, you look into the darkness of human evil, the problem is that the abyss looks back into you. And so good people had rather not look at that evil, and so they invent terms like broken brain and they invent excuses like my family and drugs and they invent all kinds of other
 
 *903
 
 excuses like, "Well, if my wife had just picked up the phone, I would have told the truth." That's the problem with evil is that good, reasonable people won't - don't want to look at it.
 

 Now, I'm not gonna stand up here and you (
 
 sic
 
 ) that Chartier, Wilson, and Hilkey are nothing but hacks in it for the money. I will say, though, that they make a pretty good living making excuses for evil. I'm not saying they're bad people. As a matter of fact, I'm saying they're probably good people that don't want to admit that human evil exists, that this kind of human evil exists, so that in their minds, there's got to be some other excuse.
 

 The prosecutor's reference to either what was shown to the jury during the trial, or to the Defendant himself, as evil was not so grossly
 
 *206
 
 improper that the trial court should have intervened
 
 ex mero motu
 
 . Because North Carolina appellate courts have "declined to reverse convictions based on closing arguments referring to defendants" as "evil,"
 
 Bullock
 
 ,
 
 178 N.C. App. at 475
 
 ,
 
 631 S.E.2d at 878
 
 , we decline to depart from these prior holdings. Accordingly, the trial court did not err when it declined to intervene
 
 ex mero motu
 
 in the prosecutor's closing argument.
 

 Defendant further contends that it was grossly improper for the prosecutor to refer to Defendant's witnesses as "hacks" during closing arguments. However, "it is proper for an attorney to point out potential bias resulting from payment a witness received or would receive for his services, while it is improper to argue that an expert should not be believed because he would give untruthful or inaccurate testimony in exchange for pay."
 
 Huey
 
 ,
 
 370 N.C. at 183
 
 ,
 
 804 S.E.2d at 471-72
 
 (citation omitted). While it is improper for a prosecutor to strongly insinuate that "the defendant's expert would say anything to get paid," it is "not so grossly improper as to require
 
 ex mero motu
 
 intervention."
 
 State v. Duke
 
 ,
 
 360 N.C. 110
 
 , 129-30,
 
 623 S.E.2d 11
 
 , 24 (2005) (citing
 
 State v. Rogers
 
 ,
 
 355 N.C. 420
 
 , 464,
 
 562 S.E.2d 859
 
 , 886 (2002) ). Similarly, referring to a witness as a "$15,000 man" during closing arguments is improper, but not "grossly improper" requiring
 
 ex mero motu
 
 intervention by the trial court.
 
 Duke
 
 ,
 
 360 N.C. at 130
 
 ,
 
 623 S.E.2d at 24
 
 .
 

 Here, Defendant challenges the statement above, in which the prosecutor said, "Chartier, Wilson, and Hilkey are nothing but hacks in it for the money. I will say, though, that they make a pretty good living making excuses for evil." Even if we were to assume that reference to Defendant's witnesses as "hacks" was improper, "in determining whether argument was grossly improper, this Court considers the context in which the remarks were made, ... as well as their brevity relative to the closing argument as a whole."
 
 State v. Taylor
 
 ,
 
 362 N.C. 514
 
 , 536,
 
 669 S.E.2d 239
 
 , 259 (2008) (citation and quotation marks omitted).
 

 After reviewing the prosecutor's closing argument as a whole, this single phrase is not sufficient reason for us to disturb Defendant's judgment. Moreover, "[a]n attorney may ... on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue." N.C. Gen. Stat. § 15A-1230(a) (2017). During trial, all three doctors testified to the amount of money each had made in the past year testifying as an expert witness. Thus, the prosecutor was highlighting a fact in evidence that could have an effect on a witness' credibility. Therefore, while the prosecutor's reference to Defendant's witnesses as "hacks" was improper, it was not prejudicial or "so grossly improper
 
 *207
 
 as to impede the defendant's right to a fair trial."
 
 Huey
 
 ,
 
 370 N.C. at 179
 
 ,
 
 804 S.E.2d at 469
 
 . Thus, the trial court did not err when it did not intervene
 
 ex mero motu
 
 in the prosecutor's closing argument. Accordingly, we find no error.
 

 Conclusion
 

 For the reasons stated above, we find that the trial court did not err.
 

 NO ERROR.
 

 Judges STROUD and DIETZ concur.