IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-745

No. COA22-260

Filed 15 November 2022

Guilford County, Nos. 17CRS72674, 23276

STATE OF NORTH CAROLINA

v.

TIMOTHY GERARD WALKER, Defendant.

Appeal by Defendant from judgments entered 27 August 2021 by Judge Michael D. Duncan in Guilford County Superior Court. Heard in the Court of Appeals 20 September 2022.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Michael Bulleri, for the State.*
>
> *William D. Spence for Defendant-Appellant.*

INMAN, Judge.

¶ 1    Defendant Timothy Gerard Walker ("Defendant") appeals from two judgments entered following jury verdicts convicting him of first-degree murder and possession of a firearm by a felon. After careful review, we hold Defendant received a fair trial, free from error.

## I.    FACTUAL AND PROCEDURAL HISTORY

On 9 April 2017, Defendant and two other men, Michael Watts and James Christopher Brooks, were relaxing at Mr. Brooks' house in High Point, North Carolina.  Defendant and Mr. Brooks were sitting on a couch watching television and drinking alcohol when Marcus Boyce entered Mr. Brooks' house and began arguing with Defendant.  Mr. Brooks told the men he did not want any trouble in his house, and Mr. Boyce said he would respect Mr. Brooks' request.  He then asked Defendant to go outside so that they could have a "fair fight."  Defendant remained seated and the verbal altercation continued, with Mr. Boyce telling Defendant "when I see you again I'm going to lay you where you stand" and "[w]herever I see you at, I'm gonna kill you. I don't care if it's with your son, at your grandma's house, at the store[.]"  Mr. Boyce also put his finger in Defendant's face and spit on him as he yelled.  Mr. Boyce never put a hand on Defendant and, although he threatened to kill Defendant at a later time, he expressly stated he would not do so in Mr. Brooks' home.

After Mr. Boyce—who was unarmed—made these statements, Defendant removed a pistol from his waistband and shot Mr. Boyce at least six times.  After the first few bullets struck Mr. Boyce in the back, pelvis, arm, leg, and chest, Mr. Boyce bent over and two bullets struck him in the head.  Defendant had purchased the gun after a prior argument with Mr. Boyce and in anticipation of a future confrontation.

¶ 4        Defendant left Mr. Brooks' house with the firearm.  Mr. Brooks called 9-1-1 and emergency officials arrived at the scene to confirm the death of Mr. Boyce.  Law enforcement issued a warrant for Defendant's arrest, and Defendant turned himself in to the police 18 days later.  Defendant spoke to his girlfriend while out of police custody, telling her that he intended to deny being at the scene rather than claim self-defense.

¶ 5        Defendant was indicted for first-degree murder and possession of a firearm by a felon on 10 October 2017.  Defendant provided notice of his intent to plead self-defense on 26 March 2019. Defendant's case went to trial on 23 August 2021 in Guilford County.  Defendant twice moved to dismiss the charges against him—once at the close of the State's evidence and once at the close of all the evidence—and both motions were denied.  Defendant then requested a "stand your ground" instruction during the charge conference, which the trial court also denied.

¶ 6        On 27 August 2021, the jury found Defendant guilty on both charges. Defendant was sentenced to life imprisonment without parole on the conviction of first-degree murder and a concurrent sentence of 17-30 months on the conviction of possession of a firearm by a felon.  Defendant gave oral notice of appeal.

## II.   **ANALYSIS**

¶ 7        Defendant asserts the trial court erred in: (1) denying his motions to dismiss the first-degree murder charge for lack of premeditation and deliberation; (2) giving

the pattern jury instruction on deliberation in light of the particular facts of the case; and (3) refusing to give a "stand your ground" instruction as requested by Defendant. We hold that Defendant has failed to demonstrate error or prejudice under any theory.

### 1. *Standards of Review*

This Court reviews the trial court's denial of a motion to dismiss *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). After a defendant's motion to dismiss, the court must decide "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation and quotation marks omitted). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Blake*, 319 N.C. 599, 604, 356 S.E.2d 352, 255 (1987) (citations omitted). We must consider the evidence in the light most favorable to the State and with the benefit of all reasonable inferences. *Fritsch*, 351 N.C. at 378-79, 526 S.E.2d at 455.

Alleged errors in the trial court's jury instruction are reviewed under different standards, depending on whether such errors were preserved. If a defendant failed to preserve his challenge to the trial court's instruction, we review the issue for plain error when explicitly asserted in the defendant's brief. *State v. Foye*, 220 N.C. App.

37, 44, 725 S.E.2d 73, 79 (2012); *see also* N.C. R. App. P. 10(a)(4) (2022). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

¶ 10    Preserved challenges to jury instructions are reviewed *de novo*. *State v. Richardson*, 270 N.C. App. 149, 152, 838 S.E.2d 470, 473 (2020). In determining whether the requested instruction is warranted, we view the evidence in the light most favorable to the defendant. *State v. Debiase*, 211 N.C. App. 497, 504, 711 S.E.2d 436, 441 (2011). To prevail on appeal, the defendant must show that there is a "reasonable possibility" that the jury would have reached a different result had the requested instruction been given. *See State v. Brewington*, 343 N.C. 448, 454, 471 S.E.2d 398, 402 (1996).

### 2. *Motions to Dismiss*

¶ 11    Defendant first contends that the trial court erred in denying his motions to dismiss the charge of first-degree murder, asserting that the shooting was in the heat of passion and without premeditation and deliberation. The State disagrees, highlighting the evidence showing: (1) the number of times the deceased was shot; (2) Defendant shot Mr. Boyce twice in the head after shooting him in the body several times; (3) Defendant's departure from the scene without rendering aid, evading police for 18 days, and telling his girlfriend he intended to deny being at the scene rather

than proclaim self-defense; and (4) Defendant's testimony that he had bought the gun in anticipation of a violent confrontation with Mr. Boyce. We agree with the State that there was sufficient evidence of premeditation and deliberation to send the first-degree murder charge to the jury.

¶ 12 First-degree murder is defined in part as a "willful, deliberate, and premeditated killing[.]" N.C. Gen. Stat. § 14-17(a) (2021). Courts consider different factors to determine if a killing occurred with premeditation and deliberation. *State v. Pittman*, 332 N.C. 244, 255, 420 S.E.2d 437, 443 (1992). These factors include:

> (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the occurrence giving rise to the victim's death; (4) ill-will or previous difficulty between the parties; (5) evidence that the killing was done in a brutal manner; and (6) the nature and number of the victim's wounds.

*Id.*

¶ 13 The number of gunshot wounds inflicted is probative on the issue, as there is "some amount of time, however brief, for thought and deliberation . . . between each pull of the trigger." *State v. Austin*, 320 N.C. 276, 296, 357 S.E.2d 641, 653 (1987). Also relevant is whether the defendant "left the deceased to die without attempting to obtain assistance for the deceased." *State v. Hunt*, 330 N.C. 425, 428, 410 S.E.2d 478, 481 (1991). In analyzing premeditation and deliberation, courts look to the "totality of the circumstances" rather than a single factor. *State v. Hager*, 320 N.C.

77, 82, 357 S.E.2d 615, 618 (1987) (citing *State v. Corn*, 303 N.C. 293, 278 S.E.2d 221 (1981)).

¶ 14        Defendant rightly notes that there are circumstances in which a verbal altercation is so provocative as to foreclose a finding of premeditation. Under that precedent, "words or conduct not amounting to an assault or threatened assault, may be enough to arouse a sudden and sufficient passion in the perpetrator to negate deliberation and reduce a homicide to murder in the second degree." *State v. Watson*, 338 N.C. 168, 177, 449 S.E.2d 694, 700 (1994). However, "Defendant's mere anger at the victim is not alone sufficient to negate deliberation. . . . What is required to negate deliberation . . . is a sudden arousal of passion, brought on by sufficient provocation during which the killing immediately takes place." *Id.* at 178, 499 S.E.2d at 700. Evidence of a heated argument does not, however, foreclose a finding of premeditation and deliberation, as "[a perpetrator] may deliberate, may premeditate, and may intend to kill after premeditation and deliberation, although prompted and to a large extent controlled by passion at the time." *State v. Vause*, 328 N.C. 231, 238, 400 S.E.2d 57, 62 (1991). It is only when *all* the evidence shows a lack of premeditation and deliberation that this element is negated, *Watson*, 338 N.C. at 177, 499 S.E.2d at 700, and "evidence of [a] quarrel . . . is not enough to negate deliberation as a matter of law." *Id.* at 178, 499 S.E.2d at 700; *see also State v. Misenheimer*, 304 N.C. 108, 114, 282 S.E.2d 791, 796 (1981) (holding the State submitted sufficient evidence of

premeditation and deliberation notwithstanding the fact that "all the evidence showed that the killing occurred after defendant and his father had engaged in a struggle and his father had twice 'grabbed' defendant").

¶ 15        These precedents establish that evidence of a verbal altercation does not serve to negate a charge of first-degree murder when "there was other evidence sufficient to support the jury's finding of both deliberation and premeditation." *Watson*, 338 N.C. at 178, 499 S.E.2d at 700-01. Other such evidence exists here. Indeed, the Court in *Watson* rejected a defendant's claim that premeditation was negated in part because—as in this case—there was existing ill will between the defendant and victim, the defendant had bought a gun in anticipation of an altercation with the victim, and such evidence "tend[ed] to show preparedness on the part of defendant to kill the victim before the argument between them ensued." *Id.* at 177, 499 S.E.2d at 700. The Supreme Court also pointed out that the victim was shot multiple times— again, as occurred here—and that the number of shots supported a finding of premeditation and deliberation. *Id.* at 179, 499 S.E.2d at 701.

¶ 16        Defendant attempts to analogize this case to *State v. Corn* and *State v. Williams*, both of which vacated first-degree murder convictions on the basis that there was insufficient evidence of premeditation and deliberation when a defendant shot the victim following a verbal altercation. *Corn*, 303 N.C. at 298, 278 S.E.2d at 224; *State v. Williams*, 144 N.C. App. 526, 530-31, 548 S.E.2d 802, 805-06 (2001).

However, the facts of those cases are materially different; the defendant in *Corn* fired his gun at two men who were "bigger than him . . . and with a history of violence—who were charging at him while he was on the couch in his home," *State v. Dennison*, 171 N.C. App. 504, 509, 615 S.E.2d 404, 408 (2005) (describing *Corn*), while the defendant in *Williams* fired his weapon after being struck in the jaw by the victim. *Williams*, 144 N.C. App. at 527, 548 S.E.2d at 804. Neither defendant bought their firearms in anticipation of a violent confrontation with their victims, and both cooperated with the respective investigations within 24 hours of each shooting. *Corn*, 303 N.C. at 295, 278 S.E.2d at 222; *Williams*, 144 N.C. App. at 530-31, 548 S.E.2d at 805-06. Nor was there any evidence of prior arguments or ill will between the victims and the defendants in those cases. *Corn*, 303 N.C. at 298, 278 S.E.2d at 224; *Williams*, 144 N.C. App. at 530-31, 548 S.E.2d at 805. And, in *Williams*, the defendant fired only a single shot. 144 N.C. App. at 531, 548 S.E.2d at 805.

None of the dispositive facts in *Corn* or *Williams* is present here. The unequivocal evidence shows Defendant had previously quarreled with the victim and shot the victim at least six times in the back, pelvis, and head. After several shots struck the victim's torso, Defendant shot the victim in the head. Defendant himself testified that he left the victim at the scene of the crime without trying to render aid. He also took the murder weapon, which he had purchased in anticipation of a violent confrontation with the victim, when he fled. Defendant then remained on the lam for

18 days with knowledge that there was a warrant out for his arrest. He informed his girlfriend he intended to deny shooting the victim rather than admit doing so in self-defense. Based on the evidence presented, the jury could rationally infer that Defendant killed Mr. Boyce with premeditation and deliberation notwithstanding the verbal argument between the two men. The trial court did not err in denying Defendant's motions to dismiss the first-degree murder charge.

### 3. *Pattern Instruction on Deliberation*

Defendant next argues that the trial court erred in giving the pattern jury instruction on premeditation and deliberation, conceding that trial counsel did not object to the instruction during the charge conference. Defendant specifically and distinctly contends the trial court's instruction amounted to plain error,[1] and we therefore review this unpreserved issue under that standard.

Defendant does not dispute that the court followed Pattern Jury Instruction 206.1 for first-degree murder, which includes a definition and explanation of

---

[1] Defendant argues in the alternative that this error was preserved as a matter of law, as a trial judge is obligated to instruct the jury on all essential features of the case arising from the evidence. *State v. Harris*, 306 N.C. 724, 727, 295 S.E.2d 391, 393 (1982). Defendant's automatic preservation argument fails because our Supreme Court has elsewhere made clear that failure to object to a jury instruction waives harmless error review and subjects the issue to plain error review only. *See, e.g., State v. Lawrence*, 365 N.C. 506, 514, 723 S.E.2d 326, 332 (2012) (holding plain error review was the proper standard applicable to a defendant's claim that the trial court erred in omitting an instruction on a necessary element of the crime when defendant did not lodge any objection to the jury charge).

deliberation as an element of the crime. Rather, Defendant believes the facts in this case required the following additional instruction on deliberation: "If you find that defendant shot Mr. Boyce during a passion suddenly aroused by Mr. Boyce's assault or threatened assault upon defendant, or by his aggressive conduct toward defendant, then defendant would not be guilty of first degree murder."

¶ 20        Defendant's argument relies entirely on a dissenting opinion in *State v. Patterson*, 288 N.C. 553, 574, 220 S.E.2d 600, 615 (1975) (Exum, J., dissenting), which has no force of law. *See Georgia v. Public.Resource.Org, Inc.*, ___ U.S. ___, ___, 206 L. Ed. 2d 732, 748 (2020) ("As every judge learns the hard way, comments in a dissenting opinion about legal principles and precedents are just that: comments in a dissenting opinion." (cleaned up) (quotation marks and citation omitted)). Further, the dissent in *Patterson* was based on a "bare bones definition of deliberation" given in that case, 288 N.C. at 575, 220 S.E.2d at 616, and the pattern jury instruction used here was substantially more detailed in its definition and examples. *See State v. Cagle*, 266 N.C. App. 193, 202, 830 S.E.2d 893, 900 (2019) (rejecting a similar argument that the pattern instruction was insufficient to describe premeditation and deliberation after noting that the pattern instruction, also used in this case, "defined and provided examples of deliberation").

¶ 21        The pattern instruction used here also encompassed the law and meaning provided by the Defendant's proposed instruction, as it stated premeditation is shown

"[i]f the intent to kill was formed with a fixed purpose *not under the influence of some suddenly aroused violent passion.*"  (emphasis added). The trial court gave an instruction that accurately reflected the law and evidence, and it was "not required to frame . . . instructions with any greater particularity than is necessary to enable the jury to understand and apply the law to the evidence bearing upon the elements of the crime charged."  *State v. Lewis*, 346 N.C. 141, 145, 484 S.E.2d 379, 381 (1997) (quotation marks and citation omitted).  Defendant has thus failed to show plain error.

### 4. *"Stand Your Ground" Instruction*

In his final argument, Defendant contends that the trial court prejudicially erred in refusing to give the following "stand your ground" instruction requested during the charge conference:

> If the defendant was not the aggressor and the defendant was at a place where the defendant had a lawful right to be, the defendant could stand the defendant's ground and repel force with force regardless of the character of the assault being made upon the defendant.  However, the defendant would not be excused if the defendant used excessive force.

Defendant specifically argues that the failure to instruct the jury that he could "repel force with force regardless of the character of the assault being made upon the defendant" was prejudicial, as the jury was not informed that "defendant had the right to use deadly force even if it had not been wielded against him."

¶ 23        Instead of Defendant's requested instruction, the trial court charged the jury

as follows:

> The defendant would be excused of . . . murder on the
> ground of self-defense if, first, the defendant believed it
> was necessary to kill the victim or to use deadly force
> against the victim in order to save the defendant from
> death or great bodily harm.
>
> And, second, the circumstances, as they appeared to the
> defendant at the time, were sufficient to create such a
> belief in the mind of a person of ordinary fitness.
>
> In determining the reasonableness of the defendant's belief
> you should consider the circumstances as you find them to
> have existed from the evidence including
>
> . . . .
>
> [t]he fierceness of the assault, if any, upon the defendant
>
> . . . .
>
> The defendant would not be guilty of murder or
> manslaughter if the defendant acted in self-defense and if
> the defendant did not use excessive force under the
> circumstances.

Notably, the trial court expressly told the jury Defendant was not guilty if he acted

proportionally to the threat posed.  Ultimately, Defendant's argument fails because

proportionality is still a pre-requisite to asserting self-defense even when a defendant

had no duty to retreat.

¶ 24        Defendant's argument is foreclosed by our Supreme Court's recent decision in *State v. Benner*, where a defendant shot and killed a victim in the defendant's home. 380 N.C. 621, 2022-NCSC-28, ¶ 13.  That decision makes clear that the use of deadly force cannot be excessive and must still be proportional even when the defendant has no duty to retreat and is entitled to stand his ground:

> [T]he proportionality rule inherent in the requirement that the defendant not use excessive force continues to exist even in instances in which a defendant is entitled to stand his or her ground.  For that reason, a trial court need not use the expression "regardless of the character of the assault" in the absence of a concern that the jury would believe that the nature of the assault that the victim had made upon the defendant had some bearing upon the extent to which a defendant attacked in his own home has a duty to retreat before exercising the right of self-defense. In view of the fact that the trial court made no distinction between a simple and a felonious assault in its instructions to the jury concerning the extent to which defendant was entitled to exercise the right of self-defense without making an effort to retreat and did not tell the jury that defendant was not entitled to use a firearm or any other form of deadly force in the course of defending himself from [the victim's] attack as long as he actually and reasonably believed that he needed to use deadly force to protect himself from death or great bodily injury, the trial court did not need to further clarify that defendant was entitled to exercise the right of self-defense "regardless of the character of the assault."

*Id.* ¶ 29 (quotation marks and citations omitted).  Because the trial court in that case instructed the jury that the defendant had no duty to retreat and could use deadly

force if proportional to the threat posed by the victim, the trial court did not err in declining to give a special "stand your ground" instruction. *Id.*

¶ 25        Defendant asserts *Benner* does not apply in this case because the right to stand one's ground in the home arises under common law, while Defendant's right to stand his ground outside the home arose under statute. *See id.* ¶ 21 (noting that N.C. Gen. Stat. §§ 14-51.2 and 14-51.3 (2021) extended the common law right to stand one's ground in self-defense to places outside the home under certain circumstances). However, the language Defendant claims was prejudicially omitted—that he could respond to force with force regardless of the nature of the assault—was deemed in Benner to be "rooted in common, rather than statutory, law." *Id.* ¶ 25. The Supreme Court also held in Benner that a distinction between common and statutory law was immaterial when the trial court's instruction adequately conveyed the proportionality requirement to the jury. *Id.* ¶ 26. Here, the instruction given by the trial court effectively conveyed the proportionality concept to the jury, as it told the jury Defendant could respond with deadly force if it was not excessive. The instruction requested by Defendant does not state that he could respond to force with deadly force regardless of the character of the assault. Instead, it provides that Defendant could reply to "force with force regardless of the character of the assault being made upon the defendant. However, the defendant would not be excused if the defendant used excessive force." The trial court therefore did not err in its instruction, as its charge

effectively conveyed the concept that Defendant incorrectly claims was prejudicially omitted. *Benner*, ¶ 29.

¶ 26      Even if *Benner* does not apply, the "stand your ground" statute on which Defendant relies imposes the same requirement that any use of deadly force be proportional to that threatened against Defendant. Subsection 14-51.3(a) provides that a person in a place he has a legal right to be may use deadly force without retreating if either of the following apply: "(1) He . . . reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or . . . another," or "(2) Under the circumstances permitted pursuant to [Section] 14-51.2." N.C. Gen. Stat. § 14-51.3(a) (2021). Section 14-51.2, the "castle doctrine" statute, simply provides that a lawful occupant of a home, workplace, or motor vehicle is entitled to a rebuttable presumption that deadly force is reasonable when used against someone who had or was unlawfully breaking into that location or kidnapping someone from that location. N.C. Gen. Stat. § 14-51.2; *see also State v. Austin*, 279 N.C. App. 377, 2021-NCCOA-494, ¶¶ 24-25 (describing the presumption created by the castle doctrine statute and the circumstances in which it applies). In other words, the castle doctrine statute does not obviate the proportionality requirement inherent to lethal self-defense; instead, it simply presumes that the proportionality requirement is satisfied under specific circumstances.

¶ 27        Here, Defendant was not the owner of the home where the victim was shot, and the homeowner, Mr. Brooks, testified that the victim was "more than welcome" in the house and was never told to leave. Because the castle doctrine statute does not apply to this circumstance, Defendant could use deadly force against the victim under Subsection 14-51.3(a) *only* if it was necessary to prevent imminent death or great bodily harm, *i.e.*, if it was proportional. N.C. Gen. Stat. § 15-51.1(a)(1). The jury was given exactly this instruction and was told Defendant was not guilty "if the defendant acted in self-defense and if the defendant did not use excessive force under the circumstances."

¶ 28        Lastly, even if the trial court did err in declining to give the requested instruction, Defendant cannot show prejudice. As Defendant's own requested instruction recognized, he could not use lethal self-defense if doing so amounted to "excessive force," and the evidence overwhelmingly demonstrates that Defendant's force was excessive. Defendant was under no threat of imminent harm: while Mr. Boyce threatened to kill Defendant *at some unknown time in the future*, he was clear that he had no intention of killing Defendant in Mr. Brooks' home at the time of the altercation. The only actual physical "assault" in evidence was the victim spitting on Defendant as he shouted. Lethal force is not a proportional response to being spit on. Because the overwhelming evidence shows that the lethal force used was excessive and precluded any "stand your ground" defense, Defendant cannot show prejudicial

error. *See Benner*, ¶ 30 (holding no prejudice in failure to give an identical requested instruction because "the record contains more than sufficient evidence from which a reasonably jury could have determined that defendant used excessive force when he killed [the victim]").

### III.   CONCLUSION

¶ 29      The trial court properly denied Defendant's motions to dismiss, did not plainly err in its deliberation jury instruction, and did not err in denying Defendant's request for a specific "stand your ground" instruction.  For the foregoing reasons, we hold that Defendant received a fair trial, free from error.


NO ERROR.

Judges DIETZ and JACKSON concur.